JOAN BERNARD ARMSTRONG, Chief Judge.
1 .STATEMENT OF CASE
On February 11, 2004, the defendant, Kevin Alexander, was charged by bill of information with aggravated battery, a violation of La. R.S. 14:34. On February 17, 2004, he pleaded not guilty. On March 2, 2004 a preliminary hearing was held, and the trial court found probable cause. On October 6, 2004 a hearing was held, and the trial court granted the state’s Prieur motion. The defendant noted an objection. On October 12, 2004 after a bench trial, the defendant was found guilty as charged. The trial court set sentencing on November 30, 2004, and ordered a presentence investigation (PSI) report. The state filed a multiple bill. On November 30, 2004 the defendant filed a motion to quash the multiple bill. On that date, the hearing was held, but then recessed because the PSI had not been received. Sentencing was reset to January 25, 2005, March 9, 2005, and April 15, 2005 when the PSI was received. Sentencing was set for May 18, *1204 2005, but then continued on defense motions to June 21, 2005 and August 19, 2005. On August 19, 2005 the multiple bill hearing and sentencing was set for September 2, 2005. Because of Hurricane Katrina, sentencing was next set for March 28, 2006. On that date the defendant was sentenced to six years at hard labor concurrent with |aany other sentences. The court noted that it was a crime of violence. The multiple bill hearing was then held, and the court found the defendant to be a second felony offender, vacated the previous sentence, and sentenced the defendant to six years at hard labor under La. R.S. 15:529.1 to run concurrently with any other sentence. Defense counsel filed a written motion for appeal, which was granted.

STATEMENT OF FACT

Factual Testimony — 2000 Battery Conviction — Admitted under Prieur
At the October 12, 2004 bench trial over the state’s objection defense counsel stated that the victim in this case, Stella Boykins, had alleged that the defendant had stabbed her in 2000. The defendant was charged with aggravated battery, but ultimately due to the absence of injury and medical reports, he was found guilty of simple battery.
That prior 2000 conviction was the subject of the state’s Prieur motion, which was granted in this case. Sheryl Green testified to the facts in that 2000 case. She testified that she had known Stella Boykins, the victim, and the defendant for ten to fifteen years. She stated that on August 20, 2000 at about 1:00 a.m. she was at Boykins’ house. They had gone to a party. On the way home there was a confrontation between the defendant and Boykins. Green testified that she was in the back seat of the car. Boykins was in the passenger seat, and the defendant was driving. Green testified that the defendant took out a knife, swung at Boykins, and hit her leg. Although she was not sure if Boykins had been stabbed, Green grabbed the defendant from the back seat. She let him go, and the defendant put the knife in her face and told her to get out of the car. Green stated that she refused to exit the car, and the defendant drove to Boykins’ house. When the car stopped, the defendant jumped out, opened the back door, and put the knife |ain her face. Green testified that she pushed the knife out of her face, the defendant swung at her, and the knife struck her face. She had a flesh wound on her face, but she did not realize it. She kicked the defendant off of her, exited the car, and began to fight with the defendant. Green testified that the children inside heard the noise, her daughter ran next door to a neighbor, and the police were called. The defendant then left. Boykins went inside and changed her pants so that the officers could see her leg wound.
On cross-examination Green admitted that she attacked the defendant from the back seat, but denied stabbing him. She conceded that she did not need stitches and did not seek medical attention. Green testified that her friend, Mary Williams, was in the back seat of the car. She had gone to party with Green and Boykins. Green stated that Williams was there when the police arrived, but she was not named on the police report because she told the officers that she did not want to have anything to do with the incident. Green stated that her daughter testified at the trial involving the battery that occurred in 2000.
Stella Boykins, the victim of the current aggravated battery, testified to the facts of the 2000 battery. She stated that on the night of August 20, 2000 she, Sheryl Green, and the defendant went to a party. When they were leaving, she and the de *1205 fendant argued, and he picked up a knife and hit her on the side of the head with it. When Green asked the defendant why he did that, he argued with her. The three then drove toward Boykins’ house where Green’s children were staying. She stated that the defendant exited the car and started fighting inside. Boykins said that the defendant cut her in the leg and cut Green’s face. Then he left before the police arrived. Boykins stated that they had arrived at her house when the defendant cut her leg.
|40n cross-examination Boykins stated that on August 20, 2000 she and the defendant were arguing about the fact that he drank too much. She stated that the defendant hit her in the vehicle. She did not know that Green had attacked the defendant from the back seat. Boykins stated that the defendant tried to put Green out of the car, but then changed his mind. She said that she and Green exited the car at her house. The defendant was fighting with her, but Green tried to stop him from hitting Boykins. She stated that then the defendant pulled out his knife, cut Green on the face, and cut Boykins on the leg. She refused treatment from EMS, but went to the hospital the next day. She stated that she had twelve or fourteen stitches in her leg.
The defendant testified that on August 20, 2000, his neighbor, Mary Williams, invited him, Stella Boykins, and Sheryl Green to a birthday party. Earlier that day his daughter, Betty Boykins, had her birthday party. Williams’ older brother agreed to keep an eye on the children including Sheryl Green’s children. The defendant stated that all four of them went to the party and had a few drinks. On the way home Green and Boykins wanted to stop at the store to buy more beer. He took them to the store and then out to the lake because the women insisted. The defendant testified that he was worried about the children. After an hour at the lake, the defendant insisted that they all go home to their children. Sheryl Green started fighting with him because she was not ready to go. The defendant testified that he managed to get them all into the car and headed home when Sheryl Green took out a knife and cut him on the back of the neck. He stated that he had a knife under the floorboard; he took it out, and put it in her face. Then he put it up because he did not want to stoop to her level. The defendant stated that when they arrived at the house, Boykins and Green “started up” with |shim again with the children standing right there. He stated that his children’s testimony had saved him at the last trial, but Betty had lied to the court today.[1] The defendant claimed that Betty’s daughter and Sheryl Green’s daughter testified in 2000 that neither Boykins nor Green had been cut; however, he had been cut on the back of the neck. When he was released on the 2000 crime, he stated that he went back to live with Boykins and his children in the same apartment.
On cross-examination the defendant admitted that his knife was in the car under the carpet on August 20, 2000. He stated that he pulled out his knife after Green stabbed him in the neck with her knife. He stated that he wanted to put her out of the car, but then decided to be better than that. The defendant claimed that Green started the fight. He stated that by August 20, 2000 he knew that Boykins was cheating on him; his children also knew the truth.
FACTUAL TESTIMONY — 2004 AGGRAVATED BATTERY-INSTANT CASE
Stella Boykins testified that on December 23, 2003 at about 8:00 p.m. she had *1206 just made it home from work after stopping by her mother’s house on the way. The defendant started an argument with her, pushed her down on the sofa, and pushed her head back. Blood started gushing from her head. According to Boy-kins, the defendant grabbed her by the back of her shirt and dragged her from the living room to the bedroom as he called her names and told her that she was going die. He went into the kitchen, retrieved a knife, and stabbed her in the leg. Then he said that the knife was not big enough and went back into the kitchen. Boykins testified that she then ran out of the door toward the pay phone on the | ^corner. Then she saw a light on in a neighbor’s house and went there. The neighbor called the police. The defendant followed her, but the neighbor told him to leave. Boykins stated that an ambulance came, but she waited for the crime lab to show up. After waiting about an hour, she let her niece drive her to the hospital. Boy-kins reviewed her medical records and said that she suffered a laceration to the head and a leg wound. She had stitches in the leg wound and had to return to Charity Hospital to have them removed. Boykins stated that she called 9-1-1 from the hospital because she saw the defendant there.
On cross-examination Boykins stated that she had just arrived home from work. She poured a beer, but did not get to drink it. She said that the defendant accused her of cheating at work, and that started the argument. She stated that she showed the officers the knife. Boykins admitted that she refused EMS treatment at the scene, but said that she went to the hospital in about forty-five minutes. She had sixteen stitches in her leg.
Officer Kenney Guidry investigated Boy-kins’ complaint of aggravated battery by cutting (domestic). He went to the scene. He testified that Boykins had a small cut to the rear of her head and a small laceration on her thigh. When the officer arrived, Boykins’ leg was bleeding, and the defendant was not there. Officer Guidry stated that he obtained an arrest warrant for the defendant.
On cross-examination Officer Guidry testified that he believed that Boykins had relocated to a neighbor’s house where he met her, but then they relocated to her residence, and no one was there at the time. He stated that the neighbor chose not to be identified, and he did not interview her. At Boykins’ residence he found a small kitchen knife, but he could not recall if he seized it. He said that Boykins refused to go to the hospital in the ambulance, which had been called. He could |7not remember if Boykins was under the influence of alcohol or drugs. The officer said that he wrote the initial police report, but another officer, K. Guidry, prepared the supplemental report.
Stephanie Briscoe, the senior police dispatcher, testified that she reviewed the tape of the 9-1-1 call in the 2004 case. She identified the incident recall sheet where any information from the complainant would have been recorded. The tape was played, and the tape and the incident recall sheet were introduced into evidence.
On cross-examination Briscoe stated that there was no mention of a stabbing in the first call. A car was dispatched within two minutes. Briscoe acknowledged that the second call originated at the hospital. The victim made the call from the hospital and named the defendant as the perpetrator.
The defendant testified that on December 23, 2003 Boykins arrived home after work and started to fight with him. Boy-kins, who was drunk, was cursing at him. He tried to get away from her, but she blocked the door. According to the defendant, .Boykins fell backward and perhaps *1207 hit her head on the designer wood at the top of the sofa. He put ice into a towel, but Boykins had already run out the door to the neighbor’s house. The defendant stated that he went to Boykins’ mother’s house to get help, but Boykins had already called and said that he had stabbed her. The defendant denied stabbing Boykins; he said that he never had a knife. He said that he knew what Boykins was like when she had been drinking, but he would not hurt her. He said that he promised his mother (she had died) that he would never hurt Boykins again because of the children. The defendant stated that he was working two jobs (sixteen hours a day). He claimed that if he intended to hurt Boykins, he would have hurt her the night she came home with passion |smarks all over her body, not December 23, 2003 after work. He claimed that the evidence was clear to him and the children that Boykins was sleeping with someone else. The defendant stated that he and Boykins had been together for eighteen years, but there had been altercations and problems. He thought that after his mother passed away, everything was okay. He even took a second job, but later figured out that Boykins was just trying to get him out of the way.
On cross-examination the defendant testified that Boykins started the argument on December 23, 2003. He admitted having a prior conviction for possession of marijuana with intent to distribute. He claimed that Green and Boykins were both lying.
On redirect examination the defendant stated that he had the knife in his car for protection, but he had no knife in the house. On recross-examination he admitted that he had a kitchen in his house in which knives were kept.
The defense called Betty Boykins, the victim’s daughter, to the stand. She identified the defendant as her father. She testified that she did not see what happened. Betty Boykins stated that the day before the stabbing, the defendant had a knife in the house and threatened that if she had not been there, he would have stabbed her mother that day. She stated that her father was also stabbed during the 2000 incident.
On cross-examination Betty Boykins stated that she was sixteen at the time of the second trial; she had been twelve at the time of the trial relating to the 2000 incident.
On redirect examination she stated that she did not know if she testified at the trial relating to the 2000 incident, and she did not know how old she was in June 2001 when that trial was held.
IflAt the conclusion of the testimony the trial court stated that it was not considering the August 2000 incident even though it had granted the state’s Prieur motion as to that evidence. The court noted the victim’s testimony, which was substantiated by Officer Guidry’s testimony that Boy-kins suffered wounds to her head and leg. The court found the defendant guilty as charged.

ERRORS PATENT

A review of the record reveals no errors patent.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1

In his first assignment of error, the defendant argues that the trial court imposed an excessive sentence. He contends that the maximum penalty for a violation of La. R.S. 14:34 is ten years at hard labor. As a second felony offender he was exposed to a sentence of not less than five or more than twenty years at hard labor, but as a multiple offender the sentence will be served without any diminution. He argues *1208 that a six-year sentence is excessive for this “diminimus violation of the aggravated battery statute.”
The State counters that the defendant did not orally object to the sentence and he did not file a written motion for reconsideration of sentence. Therefore, the State contends that the defendant is precluded from raising this issue on appeal. If this Court finds otherwise, the State argues that the trial court clearly articulated its reasoning for the six year sentence, and the sentence is not excessive under the circumstances.
In State v. Smith, 2005-0375, p. 10 (La.App. 4 Cir. 7/20/05), 913 So.2d 836, 842, this Court stated:
hoUnder La.C.Cr.P. art. 881.1, a defendant may file a motion for reconsideration of sentence within thirty days following the imposition of sentence. The motion shall be oral if made at the time of sentencing or written if made thereafter, and it shall set forth the specific grounds on which it is based. La. C.Cr.P. art. 881.1 A(2). Absent the filing of a timely written motion for reconsideration of sentence or making of an oral objection at the sentencing hearing, a defendant is precluded from urging on appeal any ground of objection to the sentence.
This Court has held that the failure to file a motion to reconsider sentence or to object to the sentence at the time it is imposed precludes a defendant from raising a claim about his sentence on appeal. State v. Batiste, 2006-0875, p. 9 (La.App. 4 Cir. 12/20/06), 947 So.2d 810. See also State v. Clay, 2005-1467 (La.App. 4 Cir. 10/4/06), 942 So.2d 563; State v. Rodriguez, 2000-0519, p. 9 (La.App. 4 Cir. 2/14/01), 781 So.2d 640, 647; State v. Tyler, 98-1667, p. 14 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 775.
The appellate record does not contain a motion to reconsider sentence. The sentencing transcript contains a verbal objection only to the trial court’s finding that the defendant was a second offender; however, there is no objection to the sentence. In his brief the defendant does not mention a motion to reconsider sentence and does not claim that he orally objected to the sentence. Because the defendant failed to object or file a motion to reconsider sentence, he is precluded from raising the excessive sentence issue on appeal.[2]

I,,ASSIGNMENT OF ERROR NUMBER 2

In his second assignment of error, the defendant requests that this Court search the record for any errors patent and take the proper corrective action. This Court reviews every record for errors patent, and as noted above, none were found in this record.
For the foregoing reasons the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Betty Boykins testified before the defendant testified at trial.

. Regardless, the assignment of error does not appear to have merit. The trial court took into account the defendant's previous documented history of convictions in municipal court, his arrest for battery, as well as his controlled dangerous substance conviction. The court noted that the minimum sentence allowed under La. R.S. 15:529.1 was five years, and the defendant was being sentenced to six years because of his prior battery and convictions.