EDWARD A. DUFRESNE, Jr., Chief Judge.
 

 |2On March 5, 2008, the Jefferson Parish District Attorney filed a bill of information charging defendant, William Anderson, with indecent behavior with a juvenile in violation of LSA-R.S. 14:81. At the March 10, 2008 arraignment, defendant pled not guilty. On December 9, 2008, defendant proceeded to trial, and on the following day, a six-person jury found defendant guilty as charged. On May 4, 2009, the trial court sentenced defendant to seven years imprisonment at hard labor and also ordered defendant to pay restitution.
 
 [1]
 
 On May 14, 2009, defendant’s motion to reconsider sentence was heard and denied. From this conviction and sentence, defendant now appeals.
 

 FACTS
 

 The sixteen-year old victim S.A. lived in Plaquemines Parish with her mother D.A. and her brother T.A. Defendant was their neighbor as well as a good|sfriend of S.A.’s father R.A., who died in March of 2007. Immediately after R.A.’s death, D.A. became suspicious that some relationship had evolved between defendant and S.A. after family members noticed inappropriate conduct between them. According to D.A.,
 
 *956
 
 her suspicions grew between March of 2007 and August of 2007 when she learned that defendant had purchased an airline ticket to accompany S.A. on the same flight to a World Series softball game in Texas. Thereafter, D.A. obtained a restraining order in Plaquemines Parish ordering defendant not to have any contact with the victim in this matter or to go within one hundred yards of the victim’s residence.
 

 On the morning of November 3, 2007, at approximately 10:00 a.m., D.A. was in her daughter’s room and discovered defendant hiding in S.A.’s closet under some duffel bags. Defendant ran out of the house, but was apprehended shortly thereafter. At this time, Deputy Sterling Anderson of the Plaquemines Parish Sheriffs Office arrested defendant for being in violation of the restraining order.
 

 During the course of this investigation, S.A. gave two statements to Detective Patrick Harvey of the Plaquemines Parish Sheriffs Office. In her first statement, S.A. denied any knowledge as to how defendant was able to get inside the house. Later, on November 18, 2007, S.A. gave a second statement which conflicted with her initial statement. Based on information obtained in this second statement about incidents that allegedly occurred in a restaurant parking lot in Jefferson Parish, Detective Harvey contacted the Jefferson Parish Sheriffs Office. In addition, when D.A. found out about these incidents, she notified the Jefferson Parish Sheriffs Office and filed a complaint against defendant. After receiving information about these occurrences, Detective Jolynn Cummings of the Jefferson Parish Sheriffs Office obtained an arrest warrant for defendant.
 

 | ¿During the course of the investigation, the police obtained cell phone records from the defendant’s and the victim’s phones. These records showed that a “voluminous amount” of phone calls were placed between defendant’s and S.A.’s cell phones, with the majority of the calls being made during the late evening hours or the early morning hours. Also, as part of the investigation, S.A. was brought to Children’s Hospital where she was examined by a pediatrician. Further, she was interviewed at the Children’s Advocacy Center, and this taped interview was played at trial.
 

 S.A. testified at trial about her relationship with defendant and the incidents that occurred in Jefferson Parish. She explained that she considered some conversations with defendant to be as “boyfriend-girlfriend.” She stated that they became more than just friends in December of 2006, prior to her father passing away. She testified that initially they started talking about her father, but they gradually became “more involved.” S.A. stated that defendant told her she was beautiful and he loved her. She would tell him she loved him too.
 

 S.A. further testified that she stayed in contact with defendant and that defendant had provided her with two prepaid cell phones to prevent her mom from seeing his calls. S.A. testified that after school, she would sometimes meet defendant in the parking lot of a Jefferson Parish restaurant. According to S.A., defendant would usually be there waiting in a rental car, although sometimes he was in his own truck. She testified that she would get in his vehicle and they would kiss. She described the kissing as a “French kiss” with “tongue on tongue.” She explained that defendant would put his tongue in her mouth, and she would put her tongue in his. She testified that this happened over ten times. She said that she would stay with defendant in the parking lot for sometimes one and one-half to two hours. S.A. testified that she never had sex with de
 
 *957
 
 fendant and that he never | ^touched her in an inappropriate way. She denied that defendant touched her breasts or her private areas. She testified that their involvement was French kissing.
 

 Defendant also testified at trial. He admitted talking to S.A. on the phone; however, he said that S.A. initiated most of the phone calls, that she started calling him in November of 2006, and continued to call him in 2007. He testified that the calls continued even after the restraining order was issued because he felt an obligation to hear what she had to say, and because he was worried about her stability and state of mind regarding her father. He denied that any of the calls concerned sexual matters, and further denied that he gave S.A. any prepaid cell phones.
 

 Defendant also admitted that he met S.A. twice between August 29, 2007 and November 3, 2007, in violation of the restraining order. However, he denied that any kissing occurred. He explained that he met her once in the parking lot of a Jefferson Parish restaurant to give her papers that she needed for a school assignment. On this occasion, defendant said that S.A. got into his truck, and after he gave her the papers, she thanked him, leaned over the console, kissed him on the mouth, laughed, jumped out of his truck, and ran back to her truck. He said she had never kissed him on the mouth before, and he was shocked. He stated the second time she met him was at a carwash because S.A. wanted him to help her summarize a book for her. He said she handed him the book through the window and then left. He testified that if there was kissing on that occasion, it was “on the cheek or something” and was a goodbye kiss. Defendant testified that in his opinion S.A.’s testimony of them meeting ten times and French kissing was a lie.
 

 SUFFICIENCY OF THE EVIDENCE
 

 | (Defendant argues that the evidence was insufficient to support his conviction because the case was based upon the conflicting and vague testimony of a sixteen-year old that changed her version of the events and admitted that she was a liar. Defendant contends the State failed to provide sufficient proof that he kissed S.A.; and therefore, the State failed to prove that a lewd or lascivious act occurred. Defendant recognizes that the State presented evidence that he rented cars, but argues that he had plausible explanations for the rental of the cars. He contends that the State asserted that defendant gave her a prepaid cell phone, without offering any proof that the phone was purchased by defendant or given to S.A. by defendant. Defendant also argues that he spoke frequently to S.A. because he was concerned for her mental health, particularly after her father passed away. Defendant acknowledges that his ex-wife testified regarding compromising text messages between S.A. and defendant that she had observed, but notes that no proof of the messages was admitted at trial.
 

 The constitutional standard for testing the sufficiency of the evidence, as enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 
 See State v. Ortiz,
 
 96-1609 (La.10/21/97), 701 So.2d 922, 930,
 
 cert. denied,
 
 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
 

 In the present case, defendant was convicted of indecent behavior with a juvenile in violation of LSA-R.S. 14:81. To support a conviction for that offense, the State must prove that (1) there was an age difference of greater than two years
 
 *958
 
 between the defendant and the victim, who was not yet seventeen, (2) the defendant committed a lewd or lascivious act upon the person or in the presence of |7a child, and (3) the defendant intended to arouse or gratify either his own or the victim’s sexual desires.
 
 State v. Lyles,
 
 03-141 (La.App. 5 Cir. 9/16/03), 858 So.2d 35, 50. Indecent behavior with a juvenile is a specific intent crime for which the State must prove the offender’s intent to arouse or gratify his sexual desires by his actions involving a child. Specific intent to commit indecent behavior with juveniles need not be proven as fact, but may be inferred from the circumstances and actions of the defendant.
 
 State v. Borden,
 
 07-396 (La.App. 5 Cir. 5/27/08), 986 So.2d 158, 166,
 
 twit denied,
 
 08-1528 (La.3/4/09), 3 So.3d 470.
 

 Defendant, who was forty-six years old at the time of the offense, does not dispute the required age difference between himself and S.A. He also does not make any argument regarding the necessary specific intent provided for in the statute. Instead, he argues that the State failed to present evidence of a kiss, contending that S.A. was not a credible witness. He argues that without a kiss, there was no lewd or lascivious act upon S.A.
 

 The State presented S.A.’s testimony as evidence that there was kissing between S.A. and defendant in Jefferson Parish. The State also presented evidence to corroborate S.A.’s testimony. Defendant testified to his version of the events as well.
 

 S.A. testified that she considered defendant “like a boyfriend” and that they became more than friends in December of 2006. She said that defendant told her she was beautiful and that he loved her. She testified that defendant asked her if she was a virgin and questioned her about whether she had sex with a boyfriend he was jealous of. She explained that after school she would sometimes meet defendant in the parking lot of a Jefferson Parish restaurant. She testified that defendant would be waiting for her in a rental car or in his truck, and they would “French kiss” with “tongue on tongue.” She testified that this kissing happened in lathe parking lot over ten times and further that their visits in the parking lot would sometimes last up to two hours.
 

 The State presented evidence in the form of rental agreements to prove that defendant rented a car on multiple occasions from June of 2007 until November of 2007. Defendant would return the car on the following day. Defendant denied that he went to the restaurant parking lot in a rental car and further gave several reasons why he rented cars. He said that the car burned less gas than his truck, his truck overheated when in traffic, and when going to a business meeting he did not want to have someone climbing into his truck.
 

 S.A. admitted that she lied in her first statement to Detective Harvey after defendant was found hiding in her closet because she was scared. She also testified that she lied to her mother when questioned about her relationship with defendant. However, she claimed she was telling the truth in the second statement she gave to Detective Harvey. In this statement, she told him of the kissing in the restaurant parking lot.
 

 Defendant denied French kissing S.A. Defendant admitted that he communicated with S.A. by phone. However, he denied that any of the calls concerned sexual matters. Defendant justified his conversations with S.A. by saying he felt an obligation to hear what she had to say because he was worried about her stability and state of mind regarding her father. He denied that he gave S.A. cell phones.
 

 The credibility of witnesses presenting conflicting testimony on factual
 
 *959
 
 matters is within the sound discretion of the trier of fact. The trier of fact shall evaluate the witnesses’ credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. It is not the function of the appellate court to second-guess the credibility of witnesses as | adetermined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law.
 
 State v. Jones,
 
 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. The victim’s testimony alone can be sufficient to establish the elements of a sexual offense, even when the State does not introduce medical, scientific, or physical evidence to prove the commission of the crime.
 
 State v. Lyles,
 
 858 So.2d at 50-51.
 

 In the present case, the jury was presented with all of the evidence, and it apparently rejected defendant’s theory that he only met with S.A. once in the parking lot and that S.A. kissed him on the mouth and then left. Instead, the jury obviously believed S.A.’s testimony that she met defendant on multiple occasions and they French kissed in the restaurant parking lot.
 

 In the present case, the testimony of the victim about the repeated French kissing proved that defendant committed a lewd or lascivious act.
 
 [2]
 
 Further, the evidence surrounding the background of their relationship and the circumstances involved showed that defendant intended to arouse or gratify either his own or the victim’s sexual desires "with the kissing. Accordingly, viewing the evidence in the light most favorable to the prosecution, we find that the State presented sufficient evidence to support defendant’s conviction of indecent behavior with a juvenile. The arguments raised by defendant in this assigned error are without merit.
 

 ADMISSION OF OTHER CRIMES EVIDENCE
 

 On appeal, defendant challenges the admission of other crimes evidence under LSA-C.E. art. 404(B). On April 28, 2008, the State filed a notice of intent to use evidence of other crimes that occurred in Plaquemines Parish. Specifically, the | inState wanted to introduce evidence that on November 3, 2007, defendant was found hiding in the victim’s bedroom closet in violation of a protective order that had been previously issued. At the September 10, 2008 hearing, the trial judge ruled that the evidence was admissible noting that the probative value of the evidence outweighed its prejudicial effect.
 

 Defendant now argues that this other crimes evidence was improperly admitted and that his conviction should be reversed. Defendant contends that he was charged with kissing S.A. in a car outside of a restaurant, and the fact that he was arrested for violating the restraining order would have been sufficient to accomplish the State’s purpose. Defendant concludes that the admission of the facts surrounding the violation of the order, that is, that defendant was found hiding in S.A.’s closet, was unduly prejudicial. He explains that hiding in a female’s bedroom, especially overnight as S.A. testified, could only have led the jury to conclude that defendant and S.A. were engaged in actual sexual activity or at the very least defendant’s intentions were to engage in some type of
 
 *960
 
 sexual activity, which are more serious allegations than kissing S.A. in a car in a public parking lot. Defendant argues that based upon the conflicting evidence regarding the accusations in this case, the jury likely used the evidence of the State’s allegations of the events that occurred in Plaquemines Parish in order to find defendant guilty of the charges in the present case.
 

 Generally, evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial. LSA-C.E. art. 404(B)(1);
 
 State v. Prieur,
 
 277 So.2d 126, 128 (La.1978). However, when evidence of other crimes tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this rule.
 
 State v. Dauzart,
 
 02-1187 (La.App. 5 Cir. 3/25/03), 844 So.2d 169, 165. Evidence of other crimes may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. LSA-C.E. art. 404(B)(1). In order for other crimes evidence to be admitted under this rule, one of the factors enumerated in the article must be at issue, have some independent relevance, or be an element of the crime charged.
 
 State v. Schaller,
 
 08-522 (La.App. 5 Cir. 5/26/09), 15 So.3d 1046, 1060. Further, “[although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.” LSA-C.E. art. 403. Absent an abuse of discretion, a trial court’s ruling on the admissibility of evidence pursuant to LSA-C.E. art 404(B)(1) will not be disturbed.
 
 State v. Schaller,
 
 15 So.3d at 1061.
 

 Evidence of other crimes, wrongs, or acts may be introduced when it is independently relevant or when it relates to conduct, formerly referred to as res ges-tae, that constitutes an integral part of the act or transaction that is the subject of the present proceeding. In
 
 State v. Taylor,
 
 01-1638 (La.1/14/03), 838 So.2d 729, 741-42, c
 
 ert. denied,
 
 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004), the Louisiana Supreme Court discussed the admissibility of “other crimes” evidence categorized as res gestae:
 

 Res gestae
 
 events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the state could not accurately present its case without reference to them. A close proximity in time and location is required between the charged offense and the other crimes evidence “to insure that ‘the purpose served by admission of other crimes evidence is not to depict defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.’ ”
 
 State v. Colomb,
 
 98-2813, p. 3 (La.10/1/99), 747 So.2d 1074, 1076 (quoting
 
 State v. Haarala,
 
 398 So.2d 1093, 1098 (La.1981)). The
 
 res gestae
 
 doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime if a continuous chain of events is evident under the circumstances.
 
 State v. Huizar,
 
 414 So.2d 741, 748 (La.1982);
 
 State v. Kimble,
 
 407 So.2d 693, 698 (La.1981). In addition, as this court recently observed, integral act (res gestae) evidence in Louisiana incorporates a rale of narrative completeness without which
 
 *961
 
 the state’s case would lose its “narrative momentum and cohesiveness, ‘with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.’ ”
 
 Colomb,
 
 747 So.2d at 1076 (quoting
 
 Old Chief v. United States,
 
 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)).
 

 In the present case, the events that took place in Plaquemines Parish were so nearly connected to the charged offense that the State could not accurately present its case without reference to the violation of the protective order and the circumstances surrounding the protective order. Further, the investigation involving the violation of the protective order in Plaquemines Parish revealed the acts that constituted the offense charged in the present Jefferson Parish proceeding. Without this background information, the “narrative momentum and cohesiveness,” would have been lost. Detective Cummings agreed that her investigation in Jefferson Parish stemmed from the incident that occurred in Plaquemines Parish. The victim in the case told a Plaquemines Parish detective of the incidents that occurred in Jefferson Parish after she was interviewed regarding defendant’s arrest for violating a protective order in Plaquemines Parish. Thus, it was necessary for the State to present the events that took place in Plaquemines Parish in order for the jury to understand the completeness of the story. Further, the details of the relationship assisted in demonstrating the requisite intent for the crime. Accordingly, we find that the trial court did not abuse its discretion in finding the evidence admissible. This assigned error is without merit.
 

 |
 
 ^EXCESSIVE SENTENCE
 

 By this assigned error, defendant challenges the sentence imposed as constitutionally excessive. Defendant was convicted of indecent behavior with a juvenile and received the maximum term of seven years imprisonment at hard labor. Defendant contends that as a first time offender, this maximum sentence was not justified.
 

 Defendant specifically argues that the trial judge relied too heavily upon the pre-sentence investigation (PSI) report, giving weight to charges that were never proven nor pursued. He also notes that the crime he was convicted of had the “least serious and least invasive activity necessary to obtain a conviction for indecent behavior, mere kissing.” Further, he contends that if any kissing did occur, S.A. was a willing participant. Defendant concludes that under these circumstances he does not qualify as the most egregious of offenders and that his maximum sentence is nothing more than the needless imposition of pain and suffering and should be set aside as excessive.
 

 The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even when it is within the applicable statutory range, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.
 
 State v. Warmack,
 
 07-311 (La.App. 5 Cir. 11/27/07), 973 So.2d 104, 109. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court’s sense of justice. The trial judge is afforded wide discretion in determining 114sentences, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed.
 
 State v. Berry,
 
 08-151 (La.App. 5 Cir. 6/19/08), 989 So.2d 120, 131,
 
 writ denied,
 
 08-1660 (La.4/3/09), 6 So.3d 767.
 

 
 *962
 
 In the present case, prior to imposing the maximum sentence, the trial judge carefully considered all of the facts, the evidence, the PSI, and the sentencing guidelines. He said he felt incarceration was appropriate because there was an undue risk of harm if defendant was not incarcerated. He stated that defendant knew or should have known the victim was particularly vulnerable because of her youth and he used his status to facilitate the commission of the crime. After sentencing defendant, the trial judge further added that defendant used his status as a trusted neighbor and friend of the family to perpetrate the crime. He said he was aware of defendant’s criminal history from the PSI report and that defendant clearly was in need of incarceration. He said he believed if he was not incarcerated that he would commit similar crimes on others. He also noted that the statute provided for a maximum of seven years and that he would give him more if he could.
 

 Further, at the hearing on defendant’s motion to reconsider sentence, the trial judge, in denying the motion, noted that he was familiar with the case having heard the testimony and evidence presented at trial. He stated that he took into consideration the PSI, which was not helpful to defendant, and that he took into consideration the victim impact statement.
 

 We acknowledge that maximum sentences are reserved for the most serious violations and the worst offenders.
 
 State v. Farhood,
 
 02-490 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. A review of Louisiana jurisprudence establishes that numerous decisions have been rendered upholding maximum or near-maximum sentences imposed on individuals convicted of indecent behavior with a |, ¡juvenile. However, each of those cases contains facts significantly different from the matter presently before this court. Although no cases were found with similar facts as the present case, we nonetheless find that the record supports the sentence imposed.
 

 We have carefully reviewed the trial court’s reasons for judgment, as well as the PSI, the victim impact statement, and the circumstances of the offense. We have also considered the fact that defendant apparently used his status as a family friend and neighbor to establish his relationship with S.A. Further, their relationship started at a time when S.A. was vulnerable and concerned for her father who eventually passed away. We further note that the offense of indecent behavior with a juvenile is a heinous crime. It involves the use of innocent children to satisfy the sexual desires of an adult and requires the commission of a “lewd or lascivious act” upon, or in the presence of a child.
 
 State v. Whatley,
 
 03-1275 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, 959. Further, this Court has recognized that the jurisprudence indicates that maximum, or nearly maximum terms of imprisonment may not be excessive when the defendant has exploited a position of trust to commit sexual battery or indecent behavior with a juvenile.
 
 See State v. Badeaux,
 
 01-406 (La.App. 5 Cir. 9/25/01), 798 So.2d 234, 239,
 
 writ denied,
 
 01-2965 (La.10/14/02), 827 So.2d 414.
 

 The review of sentences under La. Const, art. 1, § 20 does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is most appropriate in a given case.
 
 State v. Williams,
 
 07-1111 (La.12/7/07), 969 So.2d 1251, 1252. Further, when an appellate court is reviewing a sentence, the relevant question is not whether another sentence might have been more appropriate, but whether the trial court abused its broad sentencing discretion.
 
 State v. Walker,
 
 00-3200 (La.10/12/01), 799 So.2d 461, 462.
 

 
 *963
 
 11fiBased on the foregoing discussion, we find that the sentence imposed is not excessive and further that the trial court did not abuse its discretion in imposing the maximum term of imprisonment in this matter. Accordingly, this assigned error is without merit.
 

 ERROR PATENT DISCUSSION
 

 We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975).
 

 Our review reveals a discrepancy between the commitment and the transcript. The commitment reflects that defendant was advised of the prescriptive period under LSA-C.Cr.P. art. 930.8 for filing an application for post-conviction relief. However, the transcript does not contain any advisal regarding the prescriptive period. Pursuant to the procedure utilized in
 
 State v. Neely,
 
 08-707, (La.App. 5 Cir. 12/16/08), 3 So.3d 532, 538,
 
 writ denied,
 
 09-0248 (La.10/30/09), 21 So.3d 272, and
 
 State v. Davenport,
 
 08-463 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451,
 
 writ denied,
 
 09-0158 (La.10/16/09), 19 So.3d 473, we advise defendant by this opinion that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of LSA-C.Cr.P. arts. 914 or 922.
 

 We further note that the December 10, 2008 jury trial minute entry contains errors. According to the December 9, 2008 jury trial minute entry, six jurors were selected in this matter. However, the December 10, 2008 minute entry reflects that twelve jurors deliberated and yielded a “12-0” result. Further, although defendant was charged with and convicted of indecent behavior with a juvenile, the December 10, 2008 minute entry reflects defendant was charged with unauthorized entry, possession of marijuana — 2nd offense, and possession of a controlled 117dangerous substance. We remand the matter to the trial court with a directive to have the December 10, 2008 minute entry amended to reflect the proper jury composition and the proper charge.
 

 Accordingly, for the reasons set forth herein, we affirm defendant’s conviction and sentence and remand the matter to the trial court with directions to correct the December 10, 2008 minute entry.
 

 CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.
 

 [1]
 

 . At a later date, the trial court set restitution in the amount of $10,800.43.
 

 [2]
 

 . In
 
 State v. Louviere,
 
 602 So.2d 1042, 1044 (La.App. 4 Cir.1992),
 
 writ denied,
 
 610 So.2d 796 (La.1993), the court recognized that cases of indecent behavior with a juvenile in which kissing had occurred had uniformly involved more. However, the court further noted that a kiss appears to be proscribed behavior under LSA-R.S. 14:81 when it is repeated or accompanied by other acts that seem more likely to excite lust and to deprave morals, generally genital contact.