PATRICIA RIVET MURRAY, Judge.
 

 |,In this criminal case, the defendant, Dwan A. Summers, appeals his conviction and sentence for indecent behavior with a juvenile, a violation of La. R.S. 14:81. For the reasons that follow, we affirm.
 

 STATEMENT OF THE CASE
 

 On December 8, 2004, Mr. Summers was charged by bill of information with indecent behavior with a juvenile. On February 24, 2005, he was arraigned and pled not guilty. A preliminary hearing was held, and the trial court found probable cause. On August 7, 2007, Mr. Summers waived his right to a jury trial, and a bench trial was held. At trial, the State introduced testimony from three witnesses — the investigating officer, Detective Stephen Brunelle; the minor victim, L.W.; and the victim’s mother, Mrs. W.
 
 [1]
 
 Mr. Summers did not call any witnesses. Following closing arguments, the trial court found Mr. Summers guilty as charged. On January 10, 2008, the trial court sentenced Mr. Summers to six years at hard labor. On September 29, 2009, Mr. Summers filed a motion for an out of time appeal, which was granted. This appeal followed.
 

 i
 
 statement of the facts
 

 On June 28, 2004, Detective Brunelle, who was assigned to the New Orleans Police Department’s Sex Crimes Unit, investigated the charges underlying this matter. He interviewed L.W., Mrs. W., and several witnesses. L.W. was able to articulate that something inappropriate happened the night before at the sleepover she attended and that the perpetrator’s first name was “Dwayne” or “Dwan.” Detective Brunelle arranged for L.W. to undergo a sexual assault exam, which turned up no evidence. Although L.W. indicated to Detective Brunelle that she suffered some spotting of blood in her underwear on the morning following the incident, the medical reports indicated that no evidence of blood was found.
 

 Mrs. W. indicated to Detective Brunelle that she knew the perpetrator and that she had spoken with him on the telephone on several occasions. Mrs. W. provided Detective Brunelle with the perpetrator’s cell phone number. After receiving the perpetrator’s cell phone number, Detective Bru-nelle obtained a subpoena duces tecum directed to Sprint. Sprint provided him with the perpetrator’s name (Dwan Summers) and date of birth (December 16, 1973). Armed with this information, Detective Brunelle prepared a six-person photographic lineup, which included Mr. Summers’ photograph. He then presented the line-up to L.W. at her home. L.W. immediately identified Mr. Summers’ photograph as belonging to the perpetrator, signed the back of his photograph, and wrote on the back of his photograph the following statement: “He touched me without permission. He likes to play young girls.” L.W. indicated to | ¡¡Detective Brunelle that she knew Mr. Summers from the neighborhood but that she knew only his first name. Following the victim’s positive identification of Mr. Summers, Detective Brunelle prepared an arrest warrant.
 

 Mrs. W. (L.W.’s mother) identified her daughter’s birth certificate, which established that L.W. was born on October 30,
 
 *954
 
 1990. Mrs. W. testified that on June 27, 2004, her daughter and two other girls wanted to have a sleep-over at her twenty-one year old niece’s apartment. Her niece’s husband was scheduled to depart soon to Iraq, and her niece planned for the girls to rent some movies and to order some pizzas. According to Mrs. W., it was her daughter’s first sleep-over. Mrs. W. explained that L.W.’s father had died three and one-half months earlier, and she was trying to get L.W. out of her shell.
 

 Mrs. W. testified that her niece picked up her daughter that afternoon, and she next saw her daughter around noon the next day. At that time, Mrs. W. had some guests over. L.W. kept going in and out of the apartment. Mrs. W. asked L.W. what was wrong. L.W. eventually asked her mother to come outside to talk. L.W. then began crying and told her mother that Mr. Summers had come over to the sleep-over and inappropriately touched her. This conversation occurred approximately forty minutes after L.W. returned from the sleep-over. Mrs. W. then called 911.
 

 Thereafter, the police arrived at Mrs. W.’s home and spoke with her and her daughter. Mrs. W. accompanied L.W. to the hospital for the sexual assault exam. Mrs. W. acknowledged that she knew the perpetrator from the neighborhood. Mrs. |4W. testified that the perpetrator called her home before the police arrived. Mrs. W. characterized the substance of the phone call as follows:
 

 “He was just telling me that he was sorry for what had happened and everything and he said that he had been drinking and smoking all night and he said that he really thought [L.W.] was his girlfriend and that he was sorry. Whatever he could do to show me how sorry he was, and he was telling me that he needed help.”
 

 On cross-examination, Mrs. W. stated that she had never heard any complaints concerning the perpetrator’s behavior with young people before this incident. Mrs. W. also testified that she had no way of knowing whether her daughter had come into contact with any other boys during the sleep-over.
 

 L.W. testified that she recalled the underlying incident, which occurred on June 27, 2004, when she was thirteen. She recalled that her cousin had called that day and asked if she and several friends would like to come to her house for a sleep-over. According to L.W., she had spent the night at her cousin’s house several times in the past. On the night of the sleep-over, L.W. and her friends ate and watched television. Sometime between 10:00 p.m. and 11:30 p.m. the girls decided to go to sleep. L.W. and one friend decided to sleep in the living room, while the other girls decided to sleep in a back room. L.W. testified that some time after she went to sleep she heard a doorbell ring. Her cousin answered the door. L.W. could hear her cousin speaking with two men. L.W. recognized the voices as belonging to two men that she knew — Terrance and Dwan. L.W. explained that she recognized Dwan’s voice because she knew him from the neighborhood. Upon hearing Dwan’s voice, L.W. “kept sleeping.” L.W. next felt someone rubbing her [¿back. L.W. tried to scoot over but she then felt a hand going inside her pants, but she did not know whose hand it was. L.W. then felt two fingers entering her vagina. L.W. testified that she did not let the person know that she was awake because she was afraid that she might get hurt. This lasted approximately fifteen minutes and stopped when a cell phone started to ring. The person answered the phone. Recognizing the person’s voice, she realized that it was Dwan who was lying next to her. Although he
 
 *955
 
 continued to lie next to her for several minutes after the phone call ended, Dwan did not resume the touching. After Dwan left the apartment, L.W. moved from the front room to spend the night in her cousin’s bedroom.
 

 L.W. testified that she did not tell anyone about the incident until the next morning when she told one of her friends who had been at the sleep-over. At her friend’s insistence, L.W. spoke with her mother about the incident. L.W. recalled the police coming to her home, talking to her, being taken to the hospital, and picking Mr. Summers’ photograph out of a photographic line-up. Further, L.W. identified the photograph, her signature on the back of the photo, and the statement she wrote on the back of the photograph. L.W. also identified Mr. Summers in court.
 

 On cross-examination, L.W. admitted that her mother knew Mr. Summers; that he had been over to her home on many occasions in the past; that other family members knew him; that nothing had ever happened between her and Mr. |fiSummers in the past; and that no one else witnessed the incident between her and Mr. Summers.
 

 DISCUSSION
 

 ERRORS PATENT
 

 A review of the record for errors patent reveals none.
 

 ASSIGNMENT OF ERROR NUMBER ONE
 

 Mr. Summers’s first assignment of error is that the verdict is contrary to the law and the evidence. In particular, he contends that the evidence at trial was insufficient to establish his identity as the perpetrator.
 

 In
 
 State v. Brown,
 
 03-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18, the Louisiana Supreme Court set forth the following standard for determining a claim of insufficiency of evidence:
 

 When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.”
 
 State v. Neal,
 
 00-0674, (La.6/29/01) 796 So.2d 649, 657 (citing
 
 State v. Captville,
 
 448 So.2d 676, 678 (La.1984)).
 

 When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.”
 
 Neal,
 
 796 So.2d at 657. Ultimately, all evidence, both direct and circumstantial must be sufficient under
 
 Jackson
 
 to prove guilt beyond a reasonable doubt to a rational jury.
 
 Id.
 
 (citing
 
 State v. Rosiere,
 
 488 So.2d 965, 968 (La.1986)).
 

 \7Id.
 
 The testimony of the victim alone is sufficient to establish the elements of the offense.
 
 State v. Robinson,
 
 08-0287, p. 8 (La.App. 4 Cir. 9/24/08), 996 So.2d 56, 60,
 
 writ denied,
 
 08-2565 (La.5/22/09), 9 So.3d 137 (citing
 
 State v. Ingram,
 
 29,172, p. 10 (La.App. 2 Cir. 1/24/97), 688 So.2d 657, 664). The determination of credibility is a question of fact within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence.
 
 State v. Vessell,
 
 450 So.2d 938, 943 (La.1984).
 

 
 *956
 
 In this case, Mr. Summers was convicted of indecent behavior with a juvenile in violation of LSA-R.S. 14:81.
 
 [2]
 
 To support a conviction for that offense, the State must prove the following three elements: (i) an age difference of more than two years between the defendant and the victim, who was not yet seventeen; (ii) the defendant committed a lewd or lascivious act upon the person or in the presence of a child; and (iii) the defendant intended to arouse or gratify either his own or the victim’s sexual desires.
 
 State v. Anderson,
 
 09-934, pp. 6-7 (La.App. 5 Cir. 3/23/10), 38 So.3d 953, 957-958 (citing
 
 State v. Lyles,
 
 03-141 (La.App. 5 Cir. 9/16/03), 858 So.2d 35, 50). “Indecent behavior with a juvenile is a specific intent crime for which the State must prove the offender’s intent to arouse or gratify his sexual desires by his actions involving a child.”
 
 Anderson,
 
 GO-934 at p. 7, 38 So.3d at 958. Although the existence of such a specific intent is a question of fact, it may be inferred from the circumstances and from the defendant’s actions.
 
 Id.
 
 (citing
 
 State v. Borden,
 
 07-396, p. 12 (La.App. 5 Cir. 5/27/08), 986 So.2d 158, 166).
 

 |sMr. Summers, who was thirty years old at the time of the incident, does not dispute the required age difference between himself and L.W. Insofar as the requirement of a lewd or lascivious act, L.W.’s testimony supports the trial court’s conclusion that Mr. Summers’ actions constituted a lewd and lascivious act.
 
 [3]
 
 Insofar as the required specific intent, the record supports the trial court’s inference from the facts testified to by L.W. that Mr. Summers possessed the specific intent necessary for indecent behavior with a juvenile. Thus, the record supports Mr. Summers’ conviction.
 

 The thrust of Mr. Summers’ contention on appeal is not that the three elements were not satisfied, but rather that the state failed to negate the reasonable probability of misidentification. In support, he cites the five-factor test enunciated in
 
 Manson v. Brathwaite,
 
 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), for assessing the reliability of an identification, or the substantial likelihood of misidentification; those factors are as follows: (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness’ degree of attention; (3) the accuracy of his or her prior description of the perpetrator; (4) the level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation.
 
 Id.
 
 The focus of the
 
 Brathwaite
 
 test is on the victim’s visual identification of the perpetrator. In this case, L.W.’s identification of Mr. Summers was not a visual identification; rather, it was an auditory identification. L.W. testified that she |9recognized Mr. Summers’ voice when he answered his cell phone. Mr. Summers’ reliance on the
 
 Brathwaite
 
 test is thus misplaced.
 

 
 *957
 
 Mr. Summers also cites to several alleged discrepancies in the testimony of the state’s three witnesses, including the following three:
 

 • while multiple people were in the residence at the time, no one aside from L.W. testified to Mr. Summers being in the residence at the time of the incident;
 

 • L.W. never saw the face of her assailant, preferring instead to feign sleep; and
 

 • L.W.’s mother testified that Mr. Summers confessed and apologized for his actions in a phone call while Detective Brunelle testified that Mrs. W. told him that Mr. Summers denied the allegations.
 

 Taken together, Mr. Summers’ assertions do not cast any legally significant doubt on his conviction. First, it is of no moment that the state opted not to call as a witness any of the other people besides the victim who were in the residence at the time of the incident. The testimony of the victim alone is sufficient to establish the elements of the offense.
 
 Robinson, supra.
 
 L.W.’s testimony indicates that she heard the doorbell ring, that she heard Mr. Summers’ voice at the door, and that she heard his voice again later when he answered his cell phone.
 

 Second, the fact that L.W. never saw her attacker’s face does not lessen the efficacy of her auditory identification. L.W. testified that although she was lying on her stomach at the time of the incident and thus could not see the perpetrator, she knew that it was Mr. Summers because she recognized his voice when he answered the phone. L.W. further testified that she knew Mr. Summers from the neighborhood and from his visiting her home. L.W. still further testified that she felt someone lie down next to her and begin rubbing her back; that person inserted two fingers into her vagina; that person removed his fingers from her vagina only 11 (lafter his cell phone rang; and that she recognized Mr. Summers’ voice after he answered the ringing cell phone. Thus, L.W. heard and recognized her attacker’s voice while he was still lying next to her on the floor.
 

 Third, although there was an apparent discrepancy between Mrs. W.’s description of her phone conversation with Mr. Summers — an apology and a confession — and Detective Brunelle’s description — a denial — this apparent discrepancy does not bear upon L.W.’s identification of Mr. Summers as the perpetrator.
 

 Summarizing, the discrepancies cited by Mr. Summers are not sufficient to undermine the validity of his conviction. L.W.’s testimony supports Mr. Summers’ conviction. This assignment of error thus lacks merit.
 

 ASSIGNMENT OF ERROR NUMBER 2
 

 In his second assignment of error, Mr. Summers asserts that his six-year sentence is excessive. Under La. R.S. 14:81, Mr. Summers faced a maximum sentence of seven years.
 
 [4]
 
 In support of his argument that his sentence is excessive, Mr. Summers points out that the record does not indicate whether the trial court considered the sentencing guidelines set out in La.C.Cr.P. art. 894.1 or any other factors. Rather, the trial court sentenced Mr. Sum
 
 *958
 
 mers to six years at hard labor without stating its reasons. Mr. Summers therefore requests a remand and resentencing.
 

 |nAn initial issue that must be addressed is whether Mr. Summers preserved this issue for appeal. It is well-settled that the failure either to file a motion to reconsider sentence or to object to the sentence at the time it is imposed precludes a defendant from raising a claim regarding his sentence on appeal.
 
 [5]
 
 The record reflects that Mr. Summers failed to object contemporaneously, either orally or in writing, at the time of sentencing to the trial court’s actions or the sentence. He likewise failed to lodge an oral or written motion to reconsider sentence as provided for by La.C.Cr.P. art. 881.1.
 
 [6]
 
 Because Mr. Summers failed either to object or to file a motion to reconsider, he failed to preserve the issue of the excessiveness of his sentence for appeal. Accordingly, he is precluded from raising this issue on appeal.
 
 [7]
 

 
 *959
 

 112DECREE
 

 For the foregoing reasons, the defendant’s sentence and conviction are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . For privacy purposes, the initials of the victim and her mother are used in this opinion.
 

 [2]
 

 . La. R.S. 14:81 provides:
 

 A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
 

 (1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child’s age shall not be a defense. ...
 

 [3]
 

 .
 
 See State v. Murphy,
 
 515 So.2d 558, 562 (La.App. 1 Cir.1987),
 
 rev’d on other grounds,
 
 542 So.2d 1373 (La.l989)(holding, among other things, that the testimony of a child, who was four years old at the time of the incident, that a defendant put his index finger in her vagina, apparently through her clothing, on numerous occasions, was sufficient to establish that the defendant committed a lewd or lascivious act upon the person of the child).
 

 [4]
 

 . La. R.S. 14:81 provides in pertinent part:
 

 H. (1) Whoever commits the crime of indecent behavior with juveniles shall be fined not more than five thousand dollars, or imprisoned with or without hard labor for not more than seven years, or both, provided that the defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with the provisions of Code of Criminal Procedure Article 893.
 

 [5]
 

 .
 
 State v. Duncan,
 
 08-1579, p. 12 (La.App. 4 Cir. 6/17/09), 15 So.3d 1171, 1178;
 
 State v. Alexander,
 
 06-1274, p. 10 (La.App. 4 Cir. 5/16/07), 958 So.2d 1203, 1208;
 
 State v. Batiste,
 
 06-0875, p. 9 (La.App. 4 Cir. 12/20/06), 947 So.2d 810, 815;
 
 State
 
 v.
 
 Clay,
 
 05-1467, p. 9 (La.App. 4 Cir. 10/4/06), 942 So.2d 563, 568-69;
 
 State v. Hulbert,
 
 03-1149 (La.App. 4 Cir. 8/20/03), 852 So.2d 1245, 1246-47;
 
 State v. Rodriguez,
 
 00-0519, p. 9 (La.App. 4 Cir. 2/14/01), 781 So.2d 640, 649;
 
 State v. Tyler,
 
 98-1667 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 775;
 
 State v. Robinson,
 
 98-1606, p. 9 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 125;
 
 State v. Martin,
 
 97-0319, p. 1 (La.App. 4 Cir. 10/1/97), 700 So.2d 1322, 1323;
 
 State v. Green,
 
 93-1432, pp. 5-6 (La.App. 4 Cir. 4/17/96), 673 So.2d 262, 265;
 
 State v. Salone,
 
 93-1635, p. 4 (La.App. 4 Cir. 12/28/94), 648 So.2d 494, 495-96.
 

 [6]
 

 . La.C.Cr.P. art. 881.1 provides:
 

 A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
 

 [[Image here]]
 

 B. The motion shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based.
 

 [[Image here]]
 

 E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
 

 Furthermore, La.C.Cr.P. art. 881.2 provides:
 

 A. (1) The defendant may appeal or seek review of a sentence based on any ground asserted in a motion to reconsider sentence. The defendant also may seek review of a sentence which exceeds the maximum sentence authorized by the statute under which the defendant was convicted and any applicable statutory enhancement provisions....
 

 [7]
 

 .Regardless, we note that Mr. Summers' claim that his sentence is excessive would not have merit. Although the trial court failed to articulate that it considered the sentencing guidelines set forth in La.C.Cr.P. art 894.1, "[t]he articulation of the factual basis for a sentence is the goal of art. 894.1, not rigid or mechanical compliance with its provisions.”
 
 State v. Major,
 
 96-1214, p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, 819. When the record reflects an adequate factual basis for the sentence imposed, a remand for resentencing is unnecessary despite the lack of full compliance with La.C.Cr.P. art. 894.1.
 
 Id.
 
 (citing
 
 State v. Lanclos,
 
 419 So.2d 475 (La.1982)). Such is the case here. Mr. Summers did not receive the maximum sentence of seven years. As the State points out in its brief, Mr. Summers was initially arrested for sexual battery, which carries a ten-year maximum sentence when the victim is thirteen years old or older, La. R.S. 14:43.1; and the evidence presented at trial would have supported a conviction for that offense. If L.W. had been a year younger at the time of the offense, Mr. Summers would have faced a maximum sentence of twenty-five years for indecent behavior with a juvenile under La. R.S. 14:81 (and ninety-nine years for sexual batteiy under La. R.S. 14:43.1). Finally, Mr. Summers’ trial counsel in closing argument stated that his client did not testify because he did not want the trial court "to find out that he had a charge for this back in '83, '90, and '91.”