PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

OLGENS DRAGENICE,

*Petitioner,*

v.

ALBERTO R. GONZALES, U.S.
Attorney General,

*Respondent.*

No. 05-7050

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A45-481-578)

Argued: September 21, 2006

Decided: December 4, 2006

Before NIEMEYER, TRAXLER, and SHEDD, Circuit Judges.

Petition for review denied by published per curiam opinion.

## COUNSEL

**ARGUED:** Joseph M. Meadows, ARNOLD & PORTER, L.L.P., Washington, D.C., for Petitioner. Carol Federighi, UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Washington, D.C., for Respondent. Robert S. Litt, Brian E. Bowcut, Emily N. Glatfelter, ARNOLD & PORTER, L.L.P., Washington, D.C., for Petitioner. Peter D. Keisler, Assistant Attorney General, M. Jocelyn Lopez Wright, Assistant Director, UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Washington, D.C., for Respondent.

**OPINION**

PER CURIAM:

Olgens Dragenice challenges an order of the Board of Immigration Appeals ("BIA") directing that he be removed to Haiti as an alien convicted of certain removable offenses. Dragenice claims to be a national of the United States and, therefore, not subject to removal. We conclude that Dragenice is an alien subject to removal and deny the petition for review.

I.

Dragenice, a native and citizen of Haiti, entered the United States as an 18 year-old in April 1996, in order to join his father who was residing in New York. Dragenice completed his high school degree in 1998 and then, in 1999, enlisted in the United States Army Reserves ("USAR"). Upon enlisting, Dragenice was required to take an oath of allegiance:

> Each person enlisting in an armed force shall take the following oath:
>
> "I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God."

10 U.S.C.A. § 502 (West 1998); *see* 10 U.S.C.A. § 12102(a) (West 1998) (requiring "enlisted member[s] of a reserve component" to take the oath mandated by § 502).

In May 2000, Dragenice was convicted in Maryland state court on three charges: (1) robbery with a dangerous and deadly weapon; (2) theft involving an amount under $300; and (3) second degree assault. The Maryland court imposed concurrent sentences of five years for

the armed robbery, 18 months for the theft, and five years for the second degree assault. The sentencing court subsequently reduced both five-year sentences and instead imposed three-year sentences for both the armed robbery and the assault.

Based on these three convictions, the Immigration and Naturalization Service ("INS")[1] served Dragenice with a Notice to Appear, charging that he is subject to removal from the United States as an alien convicted, within five years after admission to the United States, of a crime involving moral turpitude for which a sentence of more than one year may be imposed, *see* 8 U.S.C.A. § 1227(a)(2)(A)(i) (West 2005); as an alien convicted of a crime of violence qualifying as an aggravated felony, *see* 8 U.S.C.A. § 1227(a)(2)(A)(iii) (West 2005); 8 U.S.C.A. § 1101(a)(43)(F) (West 2005); and as an alien convicted of a firearms offense, *see* 8 U.S.C.A. § 1227(a)(2)(C) (West 2005).

At his initial hearing on November 16, 2001, Dragenice appeared *pro se* and conceded that he was not a citizen or national of the United States and that he had been convicted of the predicate offenses set forth in the Notice to Appear. The Immigration Judge determined that Dragenice was subject to removal for having committed an aggravated felony and a crime of moral turpitude within five years of admission. The Immigration Judge deferred ruling on whether Dragenice was removable under § 1227(a)(2)(C) for having committed a firearms offense.

Dragenice then indicated that he intended to seek withholding of removal to Haiti under the Immigration and Nationality Act ("INA"), *see* 8 U.S.C.A. § 1231(b)(3)(A) (West 2005), as well as withholding of removal under the Convention Against Torture ("CAT"), *see* 8 C.F.R. § 208.16(c). The Immigration Judge continued the hearing to afford Dragenice an opportunity to file an application for such relief.

---

[1]The INS ceased to exist in 2002, and its enforcement functions were transferred to the Department of Homeland Security. *See Aremu v. Department of Homeland Security*, 450 F.3d 578, 579 n.2 (4th Cir. 2006).

In his application, Dragenice designated his "Present Nationality (Citizenship)" as Haitian. Dragenice also supplied various details of his employment history, including his service in the USAR. After conducting a hearing, the Immigration Judge denied Dragenice's request for withholding of removal under either the INA or the CAT. Based on his previous determination that Dragenice qualified as an aggravated felon, the Immigration Judge concluded that he was statutorily ineligible for withholding of removal under the INA. *See* 8 U.S.C.A. § 1231(b)(3)(B)(ii); 8 C.F.R. § 208.16(d)(2). Despite Dragenice's conviction for an aggravated felony and his resulting ineligibility for withholding, he remained eligible for deferral of removal under the CAT. *See* 8 C.F.R. § 208.17(a). Accordingly, the Immigration Judge considered Dragenice's claim for relief under the CAT on the merits but rejected it, finding that he "failed to present sufficient evidence to establish that he will be subjected to 'torture'" at the hands of Haitian government officials. J.A. 115. On March 1, 2002, the court then entered an order denying the requested relief and directing that Dragenice be removed to Haiti.

Dragenice appealed the order of removal to the BIA, challenging the Immigration Judge's factual determination that the evidence did not establish a likelihood of torture. More importantly for purposes of the question presently before us, Dragenice asserted for the first time that he was a national of the United States by virtue of his military service and, as such, was not subject to removal.

On April 30, 2003, the BIA entered a per curiam order affirming without opinion the decision of the Immigration Judge and expressly declaring it to be "the final agency determination." J.A. 136. After Dragenice filed a motion to reconsider, the BIA entered a second order dated October 17, 2003, denying Dragenice's motion. In its second order, the BIA specifically addressed the nationality claim: "The respondent also again argues that he is a national of the United States. The respondent has not presented an error in our previous decision regarding this issue. Moreover, even considering the respondent's arguments in his motion to reconsider, he has not established that he acquired United States nationality under the means provided in the Immigration and Nationality Act." J.A. 137.[2]

---

[2]In so concluding, the BIA cited and relied upon its decision in *Matter of Navas-Acosta*, 23 I & N Dec. 586 (BIA 2003). In *Matter of Navas-*

Dragenice did not petition for review of either BIA decision. Instead, on February 26, 2003, while his appeal of the Immigration Judge's decision was still pending before the BIA, Dragenice filed a habeas petition in federal district court alleging that his detention pending removal was unlawful because he was not an "alien" as defined by the INA. *See* 8 U.S.C.A. § 1227(a)(2); 8 U.S.C.A. § 1101(a)(3) (West 2005). As in his appeal to the BIA, Dragenice argued that he was a "national of the United States," having voluntarily enlisted in the USAR and taken an oath of allegiance to the United States for that purpose. *See* 8 U.S.C.A. § 1101(a)(22) (defining United States national as a citizen or, alternatively, a noncitizen who "owes permanent allegiance to the United States"). Dragenice asserted that he was still a member of the USAR and had not been discharged from his sworn duty. The district court concluded, however, that it lacked habeas jurisdiction to determine an issue of nationality in the context of a removal proceeding. The court transferred Dragenice's habeas action to this court under 28 U.S.C. § 1631, which permits the transfer of a case from a court without jurisdiction to a court in which the action "could have been brought" originally. We remanded the case, concluding that the district court had not been *without* jurisdiction to consider Dragenice's nationality claim raised in the habeas petition and thus had improperly transferred the action under section 1631. *See Dragenice v. Ridge*, 389 F.3d 92, 100 (4th Cir. 2004).

Before the district court issued a decision on remand, however, Congress passed the REAL ID Act of 2005. Section 106(a) of the REAL ID Act streamlined the process of seeking judicial review of removal orders under the INA, providing that, "[n]otwithstanding any other provision of law . . . including section 2241 of Title 28, or any other habeas corpus provision, . . . a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C.A. § 1252(a)(5).[3] Thus, Congress "divested federal courts of jurisdiction over § 2241

---

*Acosta*, the BIA determined, based on "the historical meaning of the term 'national' and the statutory framework of the Act," that a person may acquire the status of a United States national "only though birth or naturalization." *Id.* at 588.

[3]The statute includes limited exceptions not relevant here.

petitions attacking removal orders." *Rosales v. Bureau of Immigration and Customs Enforcement*, 426 F.3d 733, 736 (5th Cir. 2005) (per curiam), *cert. denied*, 126 S. Ct. 1055 (2006).

Moreover, in section 106(c) of the REAL ID Act, Congress established transitional rules, directing that in cases like this one, where a habeas petition "challenging a final administrative order of removal . . . [was] pending in a district court on the date of the enactment of this division, then the district court shall transfer the case . . . to the court of appeals for the circuit in which a petition for review could have been properly filed. . . . The court of appeals shall treat the transferred case as if it had been filed pursuant to a petition for review. . . ." Pub. L. No. 109-13, 119 Stat. 231, 311 § 106(c); *see Medellin-Reyes v. Gonzales*, 435 F.3d 721, 723 (7th Cir. 2006) (per curiam) ("[A]ll collateral proceedings pending on May 11, 2005, when the Real ID Act took effect, and transferred to courts of appeals under § 106(c), must be treated as timely petitions for review, no matter how long it has been since the [BIA] rendered its decision.").

The district court transferred Dragenice's habeas petition to this court pursuant to the REAL ID Act's transitional rules. In accordance with the transitional rules, we will treat the habeas petition as if it were a petition for review.

Accordingly, we turn now to consider the single issue in the present appeal: Is Dragenice, by virtue of the oath administered when he enlisted in the United States Army, a "national of the United States" who, by definition, is not subject to removal?

## II.

Only "aliens" are subject to removal under the INA. *See* 8 U.S.C.A. § 1227(a) (delineating "classes" of aliens subject to removal from the United States); *see also Alwan v. Ashcroft*, 388 F.3d 507, 512 (5th Cir. 2004). The INA defines "alien" as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). In turn, the INA defines a "national of the United States" as "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22). Congress provided no explicit guidance, however, as

to the circumstances under which a person "owes permanent allegiance to the United States."

Dragenice contends that he qualifies as a "national of the United States" under subsection (B) because he is a noncitizen who owes permanent allegiance to the United States. According to Dragenice, he acquired "national" status when he took the enlistment oath for the United States military in 1999, swearing to "support and defend the Constitution of the United States against all enemies, foreign and domestic; . . . [and to] bear true faith and allegiance to the same." 10 U.S.C.A. § 502. Dragenice argues that his sworn allegiance is "permanent" within the meaning of the statute because it is of a continuing nature—Dragenice has not yet been discharged and remains subject to his military obligations even now.

The Attorney General asserts that "national" status cannot be acquired under section 1101(a)(22) through the means suggested by Dragenice; rather, he contends that the structure of the INA permits a noncitizen to become a "national of the United States" only through one of two ways. First, a person may become a national — indeed, a citizen national — through the process of naturalization. Chapter 2 of Title III of the INA, entitled "Nationality Through Naturalization," establishes this process. *See* 8 U.S.C.A. §§ 1421-1458 (West 2005). Second, national status may be obtained through a person's circumstances of birth. Chapter 1 of Title III, entitled "Nationality at Birth and Collective Naturalization," awards noncitizen national status to individuals born to parents who are nationals or born in outlying territories of the United States. *See* 8 U.S.C.A. § 1408. The Attorney General points out that the INA does not establish any other avenues for becoming a national, including enlistment in the United States military. Therefore, the Attorney General takes the position that, unless one acquires national status through birth, anything short of full naturalization will not permit a person to claim the benefits of being a "national of the United States." *See Abou-Haidar v. Gonzales*, 437 F.3d 206, 207 (1st Cir. 2006); *Marquez-Almanzar v. INS*, 418 F.3d 210, 217-19 (2d Cir. 2005); *Tovar-Alvarez v. United States Att'y Gen.*, 427 F.3d 1350, 1353 (11th Cir. 2005) (per curiam); *Perdomo-Padilla v. Ashcroft*, 333 F.3d 964, 966 (9th Cir. 2003).

Dragenice, however, claims that under *United States v. Morin*, 80 F.3d 124 (4th Cir. 1996), he may establish that he owes permanent

allegiance to the United States without having to complete the naturalization process. In *Morin*, this court considered whether there was a sufficient basis upon which to impose a penalty under 18 U.S.C.A. § 2332(a) for the murder of "a national of the United States, while such national is outside the United States." *See Morin*, 80 F.3d at 126. *Morin* held that the victim, a citizen of Mexico, qualified as a national under section 1101(a)(22) because he was a permanent legal resident who had applied for citizenship. *See id.* Thus, Dragenice insists that this circuit reads the INA to permit the acquisition of American national status through means other than birth or the process of naturalization.

We need not determine if, and to what extent, *Morin*, which arose in a criminal context, controls our analysis in the immigration context. Even under Dragenice's theory that "national of the United States" status may be established without regard to birth circumstances or the naturalization process — *i.e.*, "that an alien may attain national status through sufficient objective demonstrations of allegiance" — we conclude that Dragenice does not qualify as a national. *Alwan*, 388 F.3d at 513 (declining to decide whether birth and naturalization are the exclusive means to becoming an American national since petitioner's "claim of national status fails under either standard").

The oath Dragenice took upon enlistment does not establish that he owes *permanent* allegiance to the United States. The INA defines "permanent" as "a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the insistence either of the United States or of the individual, in accordance with law." 8 U.S.C. § 1101(a)(31). Military service is temporary by nature; it necessarily has a limit and the oath of allegiance lasts only as long as the duration of the military service. *See Reyes-Alcaraz v. Ashcroft*, 363 F.3d 937, 940 (9th Cir. 2004) (rejecting the claim that military oath could establish national status as "[t]he military oath, fairly read, promises allegiance . . . for the duration of military service, rather than permanently"). By contrast, one's status as a citizen or national is expected to continue perpetually. Our reading of the plain text in section 1101(a)(22) — even if this section is removed from the context of the INA as a whole — requires that we reject Dragenice's

argument that he owes "*permanent* allegiance" by virtue of his military oath.

There is an another factor at play that confirms our view that Dragenice does not qualify as a national under section 1101(a)(22) by virtue of his military service. The INA specifically addresses the naturalization process for noncitizen members of the United States military. Congress relaxed the requirements for such individuals but did not dispense with them. *See* 8 U.S.C.A. §§ 1439, 1440. Also instructive is the exception afforded military personnel from the statutory bar against applications for naturalization when there are removal proceedings against the applicant. *See* 8 U.S.C.A. § 1429. Persons who served in the military are exempt from section 1429. *See* 8 U.S.C.A. §§ 1439(b)(2), 1440(b)(2). These provisions suggest that the oath administered in connection with military service cannot alone confer national status; if it were otherwise, then noncitizen soldiers would never be subject to removal and Congress would not have needed to craft an exemption. *See Reyes-Alcaraz*, 363 F.3d at 940-41 (observing that numerous provisions under the INA that apply specifically to the naturalization of military personnel "suggest that the persons to whom [the statutes] apply are *not* citizens and are *not* nationals" in the first place).

### III.

For the foregoing reasons, we conclude that Dragenice is not a national of the United States under 8 U.S.C.A. § 1101(a)(22), that he is an alien, and that he is subject to removal from the United States on the grounds set forth in the order of removal.

*PETITION FOR REVIEW DENIED*