**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 6, 2012

No. 10-60925

Lyle W. Cayce
Clerk

ALLAN GUILLERMO RAMOS-GARCIA,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent

Petitions for Review of an Order of the
Board of Immigration Appeals
(A039 029 122)

Before KING, HIGGINBOTHAM, and HAYNES, Circuit Judges.
PER CURIAM:[*]

Allan Guillermo Ramos-Garcia, a permanent resident of the United States, was ordered removed to his native country of Honduras as a consequence of his 2002 conviction for indecent behavior with juveniles. He challenges the Board of Immigration Appeals's decision on the grounds that his conviction was not for a removable offense, that the Board abused its discretion by denying his motion for reconsideration, and that his military service makes him a national of the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-60925

United States. For the reasons below, we deny Ramos's consolidated petitions for review.

I.

Petitioner Allan Guillermo Ramos-Garcia (Ramos), a native and citizen of Honduras, was admitted to the United States in August 1985 as a lawful permanent resident. In 2002 Ramos pled guilty to indecent behavior with juveniles, in violation of La. Rev. Stat. 14:81. Specifically, he was charged with "wilfully, unlawfully, knowingly and intentionally commit[ting] lewd or lascivious acts upon...or in the presence of a juvenile [ages 13 and 15]...with the intention of arousing or gratifying the sexual desires of either person, in violation of the provisions of R.S. 14:81." He received a suspended three year sentence and five years probation, which he successfully completed in 2007.

On July 1, 2009 the Department of Homeland Security served Ramos with a Notice to Appear, charging he was subject to removal from the United States as a result of his 2002 conviction. Through counsel, Ramos admitted to the factual allegations contained in the notice. He also conceded the charge of removability at a hearing before an Immigration Judge (IJ). The IJ entered an order of removal to Ramos's native country of Honduras. Ramos appealed to the Board of Immigration Appeals (BIA), claiming the conduct proscribed by La. Rev. Stat. 14:81 does not constitute sexual abuse of a minor, and therefore is not an aggravated felony subjecting him to deportation. Because Ramos had previously conceded his conviction subjected him to deportation, the BIA concluded he was foreclosed from arguing otherwise and dismissed the appeal.

Ramos filed two motions to reconsider. He reiterated his argument that his conviction under La. Rev. Stat. 14:81 was not for an aggravated felony, and claimed ineffective assistance of counsel prevented him from reasonably presenting his case during his removal hearing before the IJ. He also claimed he could not be removed from the United States because his military service

2

No.  10-60925

made him a national.  The BIA rejected Ramos's second contention.  It concluded, however, that he had substantially satisfied the requirements for a claim of ineffective assistance by showing he was prejudiced by his counsel's concession of removability.  The case was remanded to the IJ.

On remand, Ramos again argued the conduct proscribed by La. Rev. Stat. 14:81 does not constitute sexual abuse of a minor.  The IJ disagreed, as did the BIA on appeal.  The BIA also denied Ramos's motion for reconsideration on the grounds that he failed to identify any error of fact or law in its decision that would have altered the outcome of the appeal.  Ramos timely filed two petitions for review with this court.

## II.

Although a Court of Appeals generally does not have jurisdiction to review "any final order of removal against an alien who is removable by reasons of having committed" an aggravated felony,[1] we do have jurisdiction to review "constitutional claims or questions of law raised upon a petition for review," such as whether a prior conviction qualifies as an aggravated felony.[2]  In making this determination, we give substantial deference to the BIA's interpretation of the INA, but "review *de novo* whether the particular statute that the prior conviction is under falls within" the INA's definition of aggravated felony.[3]  If it does, we do not have jurisdiction to review the removal decision.[4]  This court may only

---

[1] 8 U.S.C. § 1252(a)(2)(C).

[2] 8 U.S.C. § 1252(a)(2)(D); *see also Larin-Ulloa v. Gonzales*, 462 F.3d 456, 460-61, 461 n. 6 (5th Cir. 2006).

[3] *Martinez v. Mukasey*, 519 F.3d 532, 538 (5th Cir. 2008) (quoting *Omari v. Gonzales*, 419 F.3d 303, 306 (5th Cir. 2005)); *see also Nolos v. Holder*, 611 F.3d 279, 281 (5th Cir. 2010) ("While we owe deference to the BIA's interpretation of the INA under the principles of *Chevron*..., our review of the legal questions posed here is *de novo*.")

[4] *Martinez*, 519 F.3d at 538.

No. 10-60925

review the decision of the BIA, though it will also review the ruling of the IJ where it affected the BIA's decision.[5]

### III.

Ramos first argues that a violation of La. Rev. Stat. 14:81 is not necessarily an aggravated felony for which an alien may be deported. Because we conclude that his violation of the statute constituted sexual abuse of a minor under § 1101(a)(43) and thus was an aggravated felony under the INA, Ramos is not entitled to relief on this point.

Under 8 U.S.C. § 1227(a)(2)(A)(iii), "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." Crimes qualifying as aggravated felonies are listed under § 1101, and include "murder, rape, or sexual abuse of a minor."[6] Ramos pled guilty to violating La. Rev. Stat. 14:81 in 2002. The record of conviction does not provide any information about the specific conduct with which Ramos was charged beyond identifying the victims' ages. At the time of Ramos's conviction La. Rev. Stat. 14:81 criminalized indecent behavior with juveniles, meaning

> the commission of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the persons, with the intention of arousing or gratifying the sexual desires of either person. Lack of knowledge of the child's age shall not be a defense.[7]

To determine whether a guilty plea conviction is an aggravated felony for removal purposes, we apply a "categorical approach" under *Taylor v. United*

---

[5] *Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007).

[6] 8 U.S.C. § 1101(a)(43)(A).

[7] La. Rev. Stat. 14:81(A) (2002). In 2006 this portion of the statute was moved to Subsection (A)(1). *See* La. Rev. Stat. 14:81(A)(1) (2007).

4

No. 10-60925

*States*.[8] Under this approach, we consider whether the statutory elements of the offense and the minimum conduct necessary for conviction qualify as sexual abuse of a minor. The underlying facts of the particular conviction are irrelevant.[9] If the statute of conviction defines multiple offenses, at least one of which is not an aggravated felony, we apply a "modified categorical approach." This requires us to consider the conviction court's record to determine if the guilty plea necessarily met the criteria for an aggravated felony.[10] Because the INA does not specifically define the enumerated § 1101(a)(43) offense of "sexual abuse of a minor," we use its "generic, contemporary meaning and should rely on a uniform definition regardless of the labels employed by the various States' criminal codes."[11]

In determining what constitutes sexual abuse of a minor, the BIA considers 18 U.S.C. § 3509(a)(8), which states that "'sexual abuse' includes the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children." The BIA has explained, as it did in its decision below, that this is a "useful identification of...those crimes that can reasonably be considered sexual abuse of a minor."[12] It has also emphasized, however, that "[w]e are not adopting [§ 3509(a)(8)] as a definitive standard or definition but invoke it as a guide in

---

[8] 495 U.S. 575 (1990).

[9] *See United States v. Ramos-Sanchez*, 483 F.3d 400, 402 (5th Cir. 2007).

[10] *Larin-Ulloa*, 462 F.3d at 464 (citing *Shepard v. United States*, 544 U.S. 13, 20-21 (2005)).

[11] *See United States v. Dominguez-Ocha*, 386 F.3d 639, 642-43 (5th Cir. 2004) (internal quotation marks and citations omitted) (citing *Taylor*, 495 U.S. at 592, 598).

[12] *In re Rodriguez-Rodriguez*, 22 I. & N. Dec. 991, 995-96 (BIA 1999).

identifying the types of crimes we would consider to be sexual abuse of a minor."[13]

In addition to the guidance provided by § 3509(a)(8), we can look to the many cases in which this circuit has defined the generic crime of "sexual abuse of a minor" under § 1101(a)(43).[14] We have explained that "the structure of § 1101(a)(43) counsels against applying a narrow reading of the phrase" sexual abuse of a minor.[15] Congress grouped this offense with the generic terms "murder" and "rape" and, unlike other offenses listed in § 1101(a)(43), did not expressly limit the meaning of "sexual abuse of a minor," or define it "by expressly referencing other provisions of the United States Code, as it did in several other parts of § 1101(a)(43)," all of which "strongly suggests an intent to give a broad meaning" to the term.[16]

"Sexual abuse of a minor" under § 1101(a)(43) contains three elements: "(1) the conduct must involve a 'child'; (2) the conduct must be 'sexual' in nature; and (3) the sexual conduct must be 'abusive.'"[17] The children involved in this case, ages thirteen and fifteen, were clearly minors.[18] An act is sexual if it is "[o]f, pertaining to, affecting, or characteristic of sex, the sexes, or the sex organs and their functions," and includes any act whose purpose is "sexual arousal or

---

[13] *Id.* at 996.

[14] Most of the cases discussing the definition of "sexual abuse of a minor" under § 1101(a)(43) do so in a sentencing rather than an immigration context. Ramos presents no reason, and we find none, why those cases are not applicable here for purposes of determining the generic meaning of "sexual abuse of a minor" under the same statutory provision. *See United States v. Najera-Najera*, 519 F.3d 509, 512 n. 2 (5th Cir. 2008).

[15] *United States v. Zavala-Sustaita*, 214 F.3d 601, 605 (5th Cir. 2000).

[16] *Id.* at 605-07.

[17] *United States v. Esparza-Andrade*, 418 Fed. Appx. 356, 358 (5th Cir. 2011) (per curiam) (unpublished) (citing *Najera-Najera*, 519 F.3d at 511).

[18] *See Zavala-Sustaita*, 214 F.3d at 604 (internal quotation marks omitted).

No.  10-60925

gratification."[19]  Abusive conduct is similarly broadly defined.  Abuse means "to use wrongly or improperly or to hurt or injure by maltreatment."[20]  A sexual act does not require physical contact with a minor to be abusive, since psychological harm may occur even without such contact.[21]  Furthermore, "we have established a per se rule that gratifying or arousing one's sexual desires in the presence of a child is abusive because it involves taking undue or unfair advantage of the minor."[22]  We have therefore held that sexually suggestive contact with or in the presence of a minor is sexual abuse.[23]

Ramos's conviction involved all three of these elements, and therefore was "sexual abuse of a minor."  The statute requires that the conduct involve a person "under the age of seventeen," and Ramos specifically pled guilty to a charge involving a thirteen and a fifteen year old.[24]  It also requires a sexual act, since the defendant must commit a "lewd or lascivious act...with the intention

---

[19] *Id.* (modification in original) (quoting AMERICAN HERITAGE DICTIONARY 1124 (2d College ed. 1982)); *see also United States v. Izaguirre-Flores*, 405 F.3d 270, 275 (5th Cir. 2005) ("Webster's Third New International Dictionary defines 'sexual' as 'of, relating to, or associated with sex as a characteristic of an organic being.'  It is therefore clear that a [N.C. Gen. Stat.] Section 14-202.1(a)(1) violation is sexual because it must have sexual gratification as its purpose.") (footnotes omitted); *United States v. Diaz-Ibarra*, 522 F.3d 343, 349 (4th Cir. 2008) (finding that the common meaning of sexual is "of or relating to the sphere of behavior associated with libidinal gratification."); *Bahar v. Ashcroft*, 264 F.3d 1309, 1312 (11th Cir. 2001) ("[T]he word 'sexual' in the phrase 'sexual abuse of a minor' indicates that perpetrator's intent in committing the abuse is to seek libidinal gratification.")

[20] *Zavala-Sustaita*, 214 F.3d at 604 (internal modifications and quotation marks omitted) (quoting AMERICAN HERITAGE DICTIONARY 70 (2d College ed. 1982)).

[21] *Id.* at 604, 605; *see also Diaz-Ibarra*, 522 F.3d at 349-50.

[22] *United States v. Acosta*, 401 Fed. Appx. 972, 973 (5th Cir. 2010) (internal modifications and quotation marks omitted).

[23] *United States v. Balderas-Rubio*, 499 F.3d 470, 473 (5th Cir. 2007); *see also Izaguirre-Flores*, 405 F.3d at 275-76 ("Gratifying or arousing one's sexual desires in the actual or constructive presence of a child is sexual abuse of a minor.")

[24] La. Rev. Stat. 14:81.

of arousing or gratifying the sexual desires of either person."[25] Under Louisiana law, lewd and lascivious conduct means an act "which is lustful, obscene, indecent, tending to deprave the morals in respect to sexual relations, and relating to sexual impurity or incontinence carried on in a wanton manner."[26] The statute also requires that the act be committed with "the intention of arousing or gratifying the sexual desires" of the defendant or the minor.[27] Finally, the sexual act must be done to the minor's person, or in the minor's presence, both of which constitute abusive conduct under § 1101(a)(43).[28]  For these reasons, Ramos's violation of La. Rev. Stat. 14:81 constitutes sexual abuse of a minor under § 1101(a)(43).[29]

Ramos challenges this conclusion with several arguments, none of which are availing.  He contends that "[s]exual abuse of a minor requires sexual conduct performed against a minor by an adult," and therefore that sexual actions in the presence of a minor but not against the minor's person cannot constitute an aggravated felony.  As discussed above, however, we have

---

[25] *Id.*

[26] *State v. Interiano*, 868 So.2d 9, 15 (La. 2004) (quoting *State v. Holstead*, 354 So.2d 493, 497-98 (La. 1977)); *see also Acosta*, 401 Fed. Appx. at 973 (holding that lewd and lascivious actions are inherently sexual).

[27] La. Rev. Stat. 14:81; *see also State v. Borden*, 986 So.2d 158, 167 (La. App. 5 Cir. 2008) ("Indecent behavior with a juvenile is a specific intent crime for which the State must prove the offender's intent to arouse or gratify his sexual desires....")

[28] La. Rev. Stat. 14:81; *Balderas-Rubio*, 499 F.3d at 473; *Izaguirre-Flores*, 405 F.3d at 275-76.

[29] We note that La. Rev. Stat. 14:81 closely resembles Section 800.04(3) (1987) of the Florida Code, which provides for the conviction of "[a]ny person who...[k]nowingly commits any lewd or lascivious act in the presence of any child under the age of 16 years without committing the crime of sexual battery."  The Eleventh Circuit held in *United States v. Padilla-Reyes*, 247 F.3d 1158 (11th Cir. 2001) that a violation of this statute constitutes sexual abuse of a minor under § 1101(a)(43).  Like the Florida statute, the Louisiana statute does not require the child be "a stimulus for the sexual display," since the child may be harmed by the display even if it was not motivated by the child's presence. *See Interiano*, 868 So.2d at 16.

repeatedly held that sexual abuse may occur when a sexual act is performed in the presence of a minor.[30] Ramos also claims that La. Rev. Stat. 14:81's prohibition against "lewd and lascivious conduct" criminalizes acts such as kissing that could not constitute sexual abuse of a minor under federal law.[31] Even if we were to accept Ramos's contention that kissing alone is not sufficient to constitute sexual abuse of a minor under § 1101(a)(43), his argument would fail. The Supreme Court has held that

> to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.[32]

Ramos identifies no case in which La. Rev. Stat. 14:81 has been used to prosecute a defendant solely for kissing a minor, or for kissing another person

---

[30] *See, e.g., United States v. Balderas-Rubio*, 499 F.3d at 473; *Izaguirre-Flores*, 405 F.3d at 275-76; *Zavala-Sustaita*, 214 F.3d at 605; *see also Diaz-Ibarra*, 522 F.3d at 350 ("[O]nce a defendant misuses the minor with the intent to achieve sexual gratification, the act of abuse is complete, irrespective of whether the minor suffered some physical or psychological injury.") (citing *United States v. Baron-Medina*, 187 F.3d 1144, 1147 (9th Cir. 1999); *Padilla-Reytes*, 247 F.3d at 1163)).

[31] Ramos relies on *James v. Mukasey*, 522 F.3d 250, 258 (2d Cir. 2008), which concluded that kissing could not constitute sexual abuse of a minor. The Second Circuit based this on its interpretation of 18 U.S.C. § 3509(a)'s definition of sexual abuse. Although the BIA looks at § 3509(a) for guidance in defining sexual abuse of a minor, it has not adopted that definition as a "definitive standard." *See Rodriguez*, 22 I. & N. Dec. 991, 996.

[32] *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

No.  10-60925

in the presence of a minor.[33]   He therefore has not identified a reasonable probability that the statute would be applied in this manner.

Ramos also contends a defendant could be convicted under La. Rev. Stat. 14:81 merely for committing a lewd and lascivious action within a child's physical proximity.  The Louisiana Supreme Court held in *State v. Interiano*, however, that a defendant only violates 14:81 if he knowingly commits "a sexual act such that the child sees or senses that a sexual act is taking place."[34]  We have held that this suffices to constitute sexual abuse of a minor under § 1101(a)(43).[35] Ramos objects to any reliance on the reasoning of *Interiano* on the basis that it was decided two years after his conviction.  This argument is unpersuasive.  Once again, Ramos has identified no case in which a state court ever applied the statute in this broad and theoretical manner.  He therefore has not shown a reasonable probability that the statute creates a crime outside the generic definition of sexual abuse of a minor.[36]

Finally, Ramos urges us to adopt the more narrow definition of "sexual abuse of a minor" contained in 18 U.S.C. § 2243.  We have previously rejected

---

[33] Ramos relies on *State v. Anderson*, 38 So.3d 953 (La. App. 5 Cir. 2010) and *State v. Rollins*, 581 So.2d 379 (La. App. 4 Cir. 1991).  Both of these cases involved more than just kissing.  The defendant in *Anderson* was prosecuted based on a minor's claim that they repeatedly french kissed in a parking lot for hours at a time and discussed the minor's sexual experiences.  The court noted that cases of indecent behavior with a juvenile in which kissing had occurred uniformly involved more than just kissing, that the defendant's behavior had been repeated numerous times, and that the surrounding circumstances indicated "the defendant intended to arouse or gratify" sexual desires through his actions.  *See* 38 So.3d at 958-59 (citing *State v. Louviere*, 602 So.2d 1042, 1044 (La. App. 4 Cir. 1992)).  In *Rollins*, minors claimed not only that the defendant kissed them, but also that he rubbed their bodies, forced them to sit on his lap while he moved up and down, and rubbed their bodies down the front of his own body.  *See* 581 So.2d at 382-83.

[34] *Interiano*, 868 So.2d at 16.

[35] *See Zavala-Sustaita*, 214 F.3d at 604 (holding that sexual abuse of a minor occurs when a defendant commits a sexual act "with knowledge of the child's presence.")

[36] *See Duenas-Alvarez*, 549 U.S. at 193.

10

No. 10-60925

the claim that "sexual abuse of a minor" must be defined by reference to § 2243. Congress chose not to expressly reference § 2243 in § 1101(a)(43), indicating its intent not to incorporate that section's definition of sexual abuse into § 1101(a)(43).[37]  Ramos gives us no reason to find otherwise here.

Because Ramos's conviction under La. Rev. Stat. 14:81 constitutes "sexual abuse of a minor" under § 1101(a)(43) and therefore is an aggravated felony for removal purposes, we do not have jurisdiction to review the removal order.[38] Ramos's petition for review on this issue is denied.

IV.

Ramos next claims the BIA erred by denying his motion for reconsideration.  "We review the denial of a motion to reconsider for abuse of discretion."[39] Such a motion may be granted if the petitioner identifies "a change in the law, a misapplication of the law, or an aspect of the case that the BIA overlooked."[40]  In his motion to reconsider, Ramos reiterated the same arguments he had previously made before the Board, and which we rejected above. On appeal, he also contends the Board erred because it focused on the legislative intent behind La. Rev. Stat. 14:81 instead of on the essential elements of the offense.  This second argument was not made in Ramos's motion to reconsider and is therefore an unexhausted claim of error that we lack jurisdiction to review.[41]  Even if we agreed with Ramos, however, any alleged errors were harmless because the BIA properly concluded that Ramos is subject

---

[37] *Zavala-Sustaita*, 214 F.3d at 607 n. 8.

[38] *Martinez*, 519 F.3d at 538.

[39] *Zhao v. Gonzales*, 404 F.3d 295, 301 (5th Cir. 2005).

[40] *Id.* (citing *Pierre v. INS*, 932 F.2d 418, 422 (5th Cir. 1991)); 8 U.S.C. § 1229a(c)(6)(C); 8 C.F.R. § 1003.2(b)(1).

[41] *See Omari v. Holder*, 562 F.3d 314, 320 (5th Cir. 2009); 8 U.S.C. § 1252(d).

No.  10-60925

to deportation based on his 2002 conviction.  His petition for review on this issue is therefore denied.

## V.

Finally, Ramos contends he is not subject to removal because he is a national of the United States.

A national of the United States is not subject to deportation for having committed an aggravated felony.  Whether a petitioner is a national is a purely legal issue that this court decides *de novo*, so long as there is no genuine issue of material fact regarding the petitioner's nationality claim.[42]  There are two ways in which a person may become a national: "by birth or by completing the naturalization process."[43]

Ramos does not allege or present evidence showing that he is a national by birth or that he has completed the naturalization process.  His only claim is that his service in the United States Army and Louisiana National Guard from 1987 to 1994, and the oath of allegiance he took in connection with that service, make him a national.  This Court, like several of our sister circuits, has rejected the argument that military service and the taking of the oath of allegiance make a person a national of the United States.[44]  Ramos gives us no reason to reach a different conclusion here, and his petition for review on this issue is denied.

## VI.

For the foregoing reasons, we deny Ramos's petitions for review.

---

[42] 8 U.S.C. § 1252(b)(5); *Alwan v. Ashcroft*, 388 F.3d 507, 510 (5th Cir. 2004).

[43] *Omolo v. Gonzales*, 452 F.3d 404, 408-09 (5th Cir. 2006).

[44] *Warmington v. Keisler*, 254 Fed. Appx. 287, 289 (5th Cir. 2007) (per curiam) (unpublished) ("Service in the armed forces of the United States and taking the standard military oath does not make a person a national."); *see also Dragenice v. Gonzales*, 470 F.3d 183, 188-89 (4th Cir. 2006); *Marquez-Almanzar v. INS*, 418 F.3d 210, 218-19 (2d Cir. 2005); *Reyes-Alcarez v. Ashcroft*, 363 F.3d 937, 940 (9th Cir. 2004).