

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | No. 08-13-00298-CR |
| EX PARTE: | § | |
| | § | Appeal from the |
| | § | 83rd District Court |
| JESUS ARANDA LUJAN. | § | of Pecos County, Texas |
| | § | (TC#2936) |
| | § | |
| | § | |

**O P I N I O N**

Jesus Aranda Lujan filed a Petition for Writ of Habeas Corpus challenging a plea of nolo contendere that he entered to a charge of aggravated sexual assault of a child. The petition, filed pursuant to TEX.CODE CRIM.PROC.ANN. art. 11.072 (West 2015), asserts that Lujan was not adequately informed of the immigration consequences of his plea as described in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). From this, he contends he was denied effective assistance of counsel as explained in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*Factual Summary*

Lujan was indicted for the aggravated sexual assault of a child younger than fourteen. The offense occurred on March 25, 2009. Lujan would have been 63 years old at the time. He

entered a plea of nolo contendere to that allegation on February 2, 2011, and under the terms of the plea, he received six years' deferred adjudication, a $2,500 fine, and 240 hours of community service. He also agreed to comply with some forty-nine terms for community supervision that included payment of various fees, compliance with a curfew, and compliance with special conditions for sex offenders. He was advised that if convicted of the charge, he would have faced a possible sentence of life imprisonment, or a term of not more than 99 years, but not less than five years, in addition to a fine of up to $10,000.

The date of the plea occurred after issuance of the Supreme Court's decision in *Padilla*, the seminal case outlining a defense counsel's obligation to advise clients about the immigration impact of a guilty plea. At the plea hearing, the trial court inquired about Lujan's immigration status:

> THE COURT: Mr. Lujan, are you a citizen of the United States?
>
> THE DEFENDANT: Not yet.
>
> THE COURT: Let me advise you that the sentence in this case might affect--
> might have some effect on your status in this country. Do you understand this?
>
> MR. JOHNSON [Defendant's trial counsel]: Remember we went over that, that
> it's possible you could be deported? You understood that.
>
> THE DEFENDANT: Right. Yes.

Later at the same hearing, his plea counsel questioned Lujan:

> Q. [By Mr. Johnson]: I also advised you that you might be sent to deportation by
> the INS if something comes up in regards to this; is that correct?
>
> A. [by Defendant]: Yes.
>
> . . .
>
> Q. And you're asking the Judge to accept this plea because this is what you want to do,
> right?

2

A. Yes, sir.

. . .

Q. Even though you know there may be consequences later on; is that correct?

A. Yes, sir.

The plea papers contained the statutory admonishment patterned on TEX.CODE CRIM.PROC.ANN. art. 26.13(a)(4)(West Supp. 2014):

> If you are not a citizen of the United States of America, a plea of guilty or nolo contendere (no contest) for or in connection with the offense with which you are changed [sic] in this case may result in your deportation, or your exclusion from admission to this country, or your denial of naturalization under federal law.

Lujan initialed this specific admonishment.

Some two years later, the Department of Homeland Security issued a Notice to Appear which summoned Lujan to a removal proceeding. It alleged that Lujan was a citizen of Mexico who was admitted to the United States in 1983 as an IR-1 immigrant, but that by virtue of his conviction on February 2, 2011, he was subject to removal from the United States. Lujan's plea of nolo contendere, resulting in deferred adjudication, is counted as a conviction for the purposes of federal immigration law. 8 U.S.C. § 1101(a)(48)(A); *U.S. v. Ramirez*, 367 F.3d 274, 277 (5th Cir. 2004)(deferred adjudication is included as a conviction). Under 8 U.S.C. § 1227(a)(2)(A)(iii), "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." The term "aggravated felony" is a defined term under the immigration statute and includes "murder, rape, or sexual abuse of a minor." 8 U.S.C. § 1101(a)(43)(A). In June 2013, Lujan was ordered removed from the United States.

Lujan filed his Petition for Writ of Habeas Corpus on June 21, 2013.[1] He attached to the Petition the affidavit of his habeas attorney attesting to the truth of the facts as alleged in the pleading; a notice for Lujan to appear in a federal removal proceeding; an Order of Deferred Adjudication reflecting his state court plea; an Order Imposing Conditions of Community Supervision; and his own affidavit (in Spanish and English). Mr. Lujan's affidavit claims:

> "I hired J.W. Johnson to represent me. Mr. Johnson did not advise me of the specific immigration consequences of pleading nolo contendre [sic]. I informed Mr. Johnson that I was a lawful permanent resident, not a citizen of the United States.
>
> "Mr. Johnson told me that this plea probably would not affect my immigration status. I have been a lawful permanent resident of the United States for thirty years. Deportation is the most severe penalty I could have gotten as a result. Had I known I would be deported, I would have fought my case and asked for a jury trial."

The trial court also had before it the court's file and plea paperwork from the underlying criminal case and the transcript of the plea hearing. After reviewing the pleadings and hearing argument, the trial court denied the application on October 2, 2013.

Lujan appealed and upon order of this Court, the trial court made findings of facts and conclusions of law on the two-part inquiry under *Strickland v. Washington*, 466 U.S. 668, 687–94, 104 S.Ct. 2052, 2064-68, 80 L.Ed.2d 674 (1984)(whether counsel's representation fell below an objective standard of reasonableness and whether there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different). The trial court did so and reaffirmed its denial of the application. In aid of developing those findings, the trial court solicited sworn testimony from Lujan's plea counsel who stated: "It is my habit and practice to inform clients who are not U.S. citizens of deportation consequences if they are

---

[1] Article 11.072 refers to the pleading as an "application." We use the terms application and petition interchangeably in this opinion.

4

subject to being convicted of a deportable offense. Due to the passage of time, I do not remember the specifics of my conversations with Mr. Lujan concerning the deportation consequences of his plea."

The trial court's findings of fact specifically found that the plea counsel's sworn statement was truthful and credible. The trial court found that Lujan's claim that he was told his plea would probably not affect his immigration status was not credible. At the hearing, the trial court specifically noted that Lujan's affidavit conflicted with his statements made in open court at the plea. The trial court's concluding findings read as follows:

> 9. The Court finds that Mr. Johnson advised Applicant of the deportation consequences of his plea, and that Applicant knowingly and voluntarily entered into his plea, disregarding deportation consequences and admonishments.
>
> 10. Therefore, the court finds that Applicant was not deprived of effective assistance of counsel under *Padilla* and suffered no prejudice by voluntarily waiving his right to trial and knowingly and voluntarily entering his plea of nolo contendere in this case.

*Issue on Appeal*

Lujan brings forward one issue complaining that the trial court erred in finding plea counsel's performance constitutionally sufficient under *Padilla*. He contends that under applicable federal law, it was certain that his plea would result in his deportation and exclusion from the United States. Accordingly, the various warnings that he received from the judge who took the plea, his plea counsel, and the plea paperwork that he "might" or "could" be deported were insufficient. .

*Standard of Review*

An applicant seeking relief by writ of habeas corpus must prove his claim by a preponderance of the evidence. *Ex parte Morrow,* 952 S.W.2d 530, 534-35 (Tex.Crim.App. 1997). When reviewing a trial court's ruling on an application for writ of habeas corpus, we

view the evidence presented in the light most favorable to the ruling, and we must uphold that ruling absent an abuse of discretion. *Ex parte Peterson,* 117 S.W.3d 804, 819 (Tex.Crim.App. 2003), *overruled on other grounds by Ex parte Lewis,* 219 S.W.3d 335 (Tex.Crim.App. 2007). A trial court only abuses its discretion when its ruling is arbitrary or unreasonable. *Manning v. State,* 114 S.W.3d 922, 926 (Tex.Crim.App. 2003). The mere fact that we might decide a discretionary matter in a different manner does not demonstrate an abuse of discretion. *Id.* The trial court's fact findings in a habeas proceeding will be afforded almost total deference, particularly when those findings are based on evaluations of credibility and demeanor. *Ex parte White,* 160 S.W.3d 46, 50 (Tex.Crim.App. 2004). To the extent the ultimate resolution of the application turns on an application of law, we review the determination *de novo. Ex parte Peterson,* 117 S.W.3d at 819.

*Analysis*

Lujan's claim is based on *Padilla* and we begin there. In that case, Padilla pled guilty to transporting a large quantity of marijuana. When later faced with deportation, he attacked the guilty plea contending his plea counsel had not advised him of the immigration consequences. *Id.* at 359, 130 S.Ct. at 1477-78. The United States Supreme Court agreed with Padilla, noting that legislative changes in 1996 made deportation "practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General" when a non-citizen is convicted of particular offenses. *Id.* at 363-64, 130 S.Ct. at 1480.

In Padilla's case, the relevant immigration statute was 8 U.S.C. § 1227(a)(2)(B)(i) which the court viewed as "succinct, clear, and explicit in defining the removal consequence for Padilla's conviction." *Id*. at 368, 130 S.Ct. at 1483. By simply reading the statute, Padilla's attorney "could have easily determined" that his guilty plea would make him subject to

6

deportation, because the statute "specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." *Id.* According to the court, "when the deportation consequence is truly clear ... the duty to give correct advice is equally clear." *Id.* at 369, 130 S.Ct. at 1483.

Conversely, the court noted there were likely other situations in which the deportation consequences of a particular plea were less clear-cut. "Immigration law can be complex" and there could be "numerous situations in which the deportation consequences of a particular plea are unclear or uncertain." *Id*. In those situations, counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.*

Under this clear-consequences-clear-advice requirement, if the immigration statute commands removal for the offense, counsel must do more than suggest the defendant might be deported. Here, Lujan argues that his counsel failed to advise him that deportation was a near certainty, and not merely a possibility. This Court has held on a number of occasions that when the deportation consequences are certain, the advice requires more than a warning that deportation is possible. *Ex parte Ramirez*, No. 08-11-00073-CR, 2012 WL 3113140, at *3-4 (Tex.App.--El Paso Aug. 1, 2012, no pet.)(not designated for publication); *Ex parte Carpio-Cruz*, No. 08–10–00240–CR, 2011 WL 5460848, at *7 (Tex.App.--El Paso Nov. 9, 2011), *judgment vacated,* No. PD–1872–11, 2013 WL 1149964 (Tex.Crim.App. Mar. 20, 2013)(not designated for publication). The last time we so held, however, the petition for discretionary review was granted, and that issue is now pending before the Texas Court of Criminal Appeals. *Ex parte Torres,* No. 08–12–00244–CR, 2014 WL 1168929, at *1, *4 (Tex.App.--El Paso Mar. 21, 2014, pet. granted)(not designated for publication). Other courts of appeals have made

7

similar holdings with the petitions for review either being denied, granted on other grounds, or there was no petition filed. *See Ex parte Leal*, 427 S.W.3d 455, 461 (Tex.App.--San Antonio 2014, no pet.); *Ex parte Olvera*, 394 S.W.3d 572, 576 (Tex.App.--Dallas 2012), *rev'd on other grounds*, PD-1215-12, 2013 WL 1149926 (Tex.Crim.App. Mar. 20, 2013)(not designated for publication); *Ex parte Rodriguez*, 378 S.W.3d 486, 489 (Tex.App.--San Antonio 2012, pet. ref'd); *Aguilar v. State*, 375 S.W.3d 518, 524 (Tex.App.--Houston [14th Dist.] 2012), *rev'd on other grounds*, 393 S.W.3d 787, 788 (Tex.Crim.App. 2013); *Salazar v. State*, 361 S.W.3d 99, 103 (Tex.App.--Eastland 2011, no pet.); *Ex parte Tanklevskaya*, 361 S.W.3d 86, 96-97 (Tex.App.--Houston [1st Dist.] 2011), *rev'd on other grounds*, 393 S.W.3d 787 (Tex.Crim.App. 2013); *Ex parte Romero*, 351 S.W.3d 127, 131 (Tex.App.--San Antonio 2011), *rev'd on other grounds*, 393 S.W.3d 788 (Tex.Crim.App. 2013).

We save this issue for another day, because even if Lujan prevails on the mistake of counsel prong, he cannot overcome the no prejudice finding. *See Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."); *Williams v. State*, 301 S.W.3d 675, 687 (Tex.Crim.App. 2009), *cert. denied,* 560 U.S. 966, 130 S.Ct. 3411, 177 L.Ed.2d 326 (2010)(concluding that when a defendant fails to satisfy a prong of the *Strickland* standard, the trial court need not consider the other prong); *Ex parte Moreno*, 382 S.W.3d 523, 527 (Tex.App.--Fort Worth 2012, pet. ref'd).[2]

---

[2] We also decline to address the State's claim that Lujan's deportation was not certain, and thus his counsel could have given him a less than definitive warning about his exclusion. The State argues that under the Fifth Circuit decision in *U.S. v. Mondragon-Santiago*, 564 F.3d 357 (5th Cir. 2009) a Texas deferred adjudication for an assault did not meet the definition of an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F)(a crime of violence with a prison term of at least one year). We note that the aggravated felony that Lujan was charged with falls under 8 U.S.C. § 1101(a)(43)(A), which is a different subsection. Moreover, *Mondragon-Santiago* is an illegal re-entry case and does not directly address removal, or specifically removal under 8 U.S.C. § 1101(a)(43)(A), which does not require a specific term of confinement as does 8 U.S.C. § 1101(a)(43)(F).

The trial court made a specific finding that Lujan was not prejudiced by any advice he may have received from his plea counsel. To establish prejudice, the habeas applicant must prove that there is a "reasonable probability" that, but for counsel's errors, he would not have pled guilty. *Johnson v. State*, 169 S.W.3d 223, 231 (Tex.Crim.App. 2005); *see also Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). We have previously recognized that "[d]eprivation of a trial" stemming from a *Padilla* violation "is a structural defect, which amounts to a serious denial of the entire judicial proceeding itself, and it demands a presumption of prejudice." *Ex parte De Los Reyes*, 350 S.W.3d 723, 730 (Tex.App.--El Paso 2011), *rev'd on other grounds,* 392 S.W.3d 675 (Tex.Crim.App. 2013). "The focus of the prejudice inquiry ... is whether the defendant was deprived of a particular proceeding by counsel's deficient performance, not whether the outcome of that proceeding would have been favorable to the defendant." *Id.* at 731. "Therefore, the defendant must demonstrate that but for counsel's performance, he would have availed himself of the proceeding in question." *Id.* In assessing prejudice, "we are to consider the circumstances surrounding [the] guilty plea and the gravity of the advice that [the defendant] did not receive as it pertained to [the defendant's] plea determination." *Ex parte Tanklevskaya*, 361 S.W.3d at 97.

We do not find that the trial court abused its discretion in failing to find prejudice. The trial court's findings suggest that part of its prejudice analysis turned on the number and nature of the warnings that Lujan in fact did receive prior to making his plea. While there may not have been an instance where Lujan was definitely told that he would be deported, there are multiple other times he was told he might be. He was told once orally by the trial judge, once in writing through the plea papers, and two to three times by his plea counsel of the possible impact of the plea on his immigration status. A repeated warning that the plea could impact his immigration

status makes it more likely Lujan did in fact include the immigration consequence in his calculus of whether to accept a plea or take his case to trial. *See Ex parte Moreno*, 382 S.W.3d at 528 (considering nature of warnings actually given in prejudice analysis). This distinguishes this case from those instances where the immigration consequence was made more in passing, if at all. *Cf. Ex parte Torres*, No. 08–12–00244–CR, 2014 WL 1168929, at *2 (attorney spent probably less than a minute discussing immigration consequence of plea); *Ex parte De Los Reyes*, 350 S.W.3d at 731 (only admonishment on immigration consequence was in written plea papers).

Lujan also argues that he was prejudiced because his plea counsel could have pursued a plea deal without immigration consequences. He cites *Rodriguez v. Holder*, 705 F.3d 207 (5th Cir. 2013) which holds that a conviction under TEX.PENAL CODE ANN. § 22.011 (West 2011) does not necessarily involve a crime of violence for deportation purposes. In *Rodriguez*, however, the individual was indicted and plead guilty under Section 22.011(a)(1) which governs sexual assaults generally. 705 F.3d at 212. For a conviction under Section 22.011(a) to qualify as a conviction meriting exclusion, it must qualify as a crime of violence, which was the deciding issue before the court in *Rodriguez. Id*. The *Rodriguez* court specifically noted that the defendant there had not been indicted under Section 22.011(a)(2) which covers sexual assaults of children aged fourteen to seventeen. *Id.* Lujan was indicted under Section 22.021(a)(2)(B) which is specific to sexual assaults of children under fourteen. Sexual abuse of a minor is specifically defined as an aggravated felony for exclusion purposes and does not require the crime of violence finding at issue in *Rodriguez*. 8 U.S.C. § 1101(a)(43)(A). The Fifth Circuit has also explained that the term "sexual abuse of a minor," is broadly defined and applied. *Ramos-Garcia v. Holder*, 483 Fed.Appx. 926, 929-30 (5th Cir. 2012). For Lujan to have avoided

the immigration consequences of the plea, the district attorney and trial court would have had to permit a plea which alleged a different crime than the one in the indictment, and which wholly ignored that the victim was younger than fourteen at the time of the offense. There is nothing in the record to suggest the State would have acceded to that request and Lujan has simply failed to meet his burden to show prejudice in this regard. *See Ex parte Moreno*, 382 S.W.3d at 528 (no prejudice shown where defendant failed to show different plea deal was possible).

The record does not contain any information about the relative strength or weakness of the State's case against Lujan. The record does indicate that Lujan was facing a serious offense with a penalty range which could have easily resulted in his living out his remaining days in prison. He was 65 on the date of the plea and the charge carried a five year to life sentence. The plea deal resulted in no jail time, a modest period of probation, and a modest fine. Faced with such a serious potential penalty, it was reasonable for Lujan to have accepted the plea even in the face of almost certain exclusion from the United States.

Finally, we note that the trial court made a specific credibility determination, discounting Lujan's claim that he was told his plea would probably *not* affect his immigration status. The record shows that the trial judge taking the plea, his own lawyer, and the plea paperwork gave him diametrically opposite advice. Given the apparent contradiction in one part of his affidavit, the trial court could have concluded that his other claim--that he would have risked trial--was simply not believable. *See Ex parte Victorio*, No. 05–11–01008–CR, 2012 WL 286803, at *6 (Tex.App.--Dallas Feb. 1, 2012, pet. ref'd)(not designated for publication)(adverse credibility determination undermined prejudice claim); *Ex parte Moreno*, 382 S.W.3d at 528 (same). Lujan's affidavit was the primary evidence he offered to support a claim of prejudice and once his credibility was tarnished, so to was that evidence of prejudice.

In summary, the trial court did not abuse its discretion in finding that Lujan was not prejudiced by the immigration advice that he was given. We overrule his sole issue and affirm the order denying habeas corpus relief.

ANN CRAWFORD McCLURE, Chief Justice

June 12, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)